UNITED STATES, Appellee,

v.

Airman Michael R. DULUS, U.S. Air Force, Appellant.

No. 44,006.
ACM S25450.

U.S. Court of Military Appeals.

Oct. 3, 1983.

For Appellant: *Colonel George R. Stevens* and *Captain Kathleen G. O'Reilly* (on brief); *Major Willard K. Lockwood.*

For Appellee: *Colonel Kenneth R. Rengert* and *Major Michael J. Hoover* (on brief); *Lieutenant Colonel Bruce R. Houston.*

*Opinion of the Court*

FLETCHER, Judge:

Prior to his trial at a special court-martial,[1] appellant was placed in pretrial confinement and his squadron section commander ordered an inventory of the contents of his automobile. This was parked on base in front of the Transition Flight Barracks and contained a number of valuable items visible from the exterior of the vehicle. In due course, during this inventory, contraband was discovered in the automobile and this evidence served as the basis for conviction of specification 2, Charge II, and Charge VI and its specification. Furthermore, during the trial, the military judge admitted a stipulation into evidence without conducting the inquiry required under *United States v. Bertelson,* 3 M.J. 314 (C.M.A.1977). Our grant of review requires us to evaluate the correctness of the military judge's denial of suppression of the evidence seized as the result of the invento-

---

1. Appellant was sentenced to a bad-conduct discharge, confinement at hard labor for 3 months, forfeiture of $300.00 pay per month for 3 months, and reduction to the grade of airman basic. The convening and supervisory authorities approved the sentence as adjudged on Jan-

uary 6 and 7, 1982, respectively. The Court of Military Review affirmed the approved sentence on June 4, 1982. 13 M.J. 807. We granted review of the two issues outlined in the preliminary paragraph. 14 M.J. 174 (1982).

ry, and his admission of Prosecution Exhibit 10 without further inquiry. 14 M.J. 174 (1982). We hold there was no error in his actions.

### I

Appellant's squadron section commander, Lieutenant Singer, asserted that he ordered the automobile inventory out of responsibility for the property of persons assigned to his command and belief that the Air Force "would be responsible for any theft that occurred." Valuable items were clearly in view in the station wagon. Testimony of record asserted a high incidence of theft on base, resulting in claims being filed against the Air Force.[2] Sergeant Cordero, assigned the inventory task, was instructed to list all property found on a form provided by Lieutenant Singer. This listing included a television set, cassette player, radar detector, CB radio, a power booster, four speakers, skis, aquarium equipment and numerous other items. During the inventory, Sergeant Cordero found what he believed to be contraband residue located in a wooden smoking box adjacent to the driver's seat. At that point the inventory was halted, a call was made to the security police office, and search authority was granted by the base commander, pursuant to which additional items of drug paraphernalia were discovered. Ultimately, the high value items inventoried were secured in a room of the Transition Flight Barracks.

Pursuant to Mil.R.Evid. 311, the military judge denied the motion to suppress the evidence found in the inventory and made the following findings of fact and conclusions of law:

On 24 September 1981, Airman Michael Dulus was placed in pretrial confinement at Hill Air Force Base, Utah. After this was accomplished and on the same day, First Lieutenant Nolan Singer, Squadron Section Commander over the accused, directed Tech Sergeant Cordero to go to the accused's private vehicle, a station wagon, and to inventory the vehicle's contents and secure them. First Lieutenant Singer had followed this practice under similar circumstances in the past, and he had previously been informed that there were high value items in the accused's vehicle. Lieutenant Singer directed this action because of his concern about the possibility of the property being stolen, and potential for a claim being lodged against the United States Air Force for theft of the property, or the property being stolen. Tech Sergeant Cordero proceeded after obtaining the vehicle's keys from the Security Police, to the vehicle's location in a public parking place located next to a barracks on Hill Air Force Base, Utah. Many of the items of personal property located in the vehicle were in public view by looking through the vehicle's windows. Finding the vehicle locked and without the consent of the accused, Tech Sergeant Cordero unlocked the vehicle. He then proceeded to take out the personal property out of the vehicle, including among other things, a television, a stereo, a citizen's band radio, four speakers, skis, and a radar detector. He also found a small wooden box by the driver's side of the vehicle. Upon opening it he found it to contain seeds and ash which he believed to be marihuana residue. Tech Sergeant Cordero terminated his inventory and called the Security Police. The vehicle was not impounded and thus Security Police Operating Instruction, 125–27, dated 14 January 1981 was not complied with.

Conclusions of Law. a. On 24 September 1981, First Lieutenant Nolan Singer acting in good faith directed that an inventory be conducted of the contents of Airman Dulus's vehicle located on Hill Air Force Base, Utah, see Military Rule of Evidence 313C. b. That such inventory administrative in nature, was directed to protect from theft or loss, the numerous high value items located in the ac-

---

2. It must be noted that no documentary evidence was introduced concerning the incidence of theft on the base, or the nature or number of claims, if any, against the United States Air Force.

cused's vehicle. c. That the inventory was conducted in a reasonable manner and was not used as a subterfuge to search without probable cause.

According to Mil.R.Evid. 313(c):

[E]vidence of crime discovered in the process of an inventory, the primary purpose of which is administrative in nature, may be seized. Inventories shall be conducted in a reasonable fashion.

This rule is consistent with the rulings of the Supreme Court concerning the inventory exception to the requirement that searches and seizures be predicated upon a warrant supported by probable cause. *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). In *South Dakota v. Opperman, supra,* the Supreme Court took the position that the constitutionality of automobile inventories depends on their reasonableness. "The decisions of this Court point unmistakably to the conclusion reached by both federal and state courts that inventories pursuant to standard police procedures are reasonable." 428 U.S. at 372, 96 S.Ct. at 3098. The Court made clear that the decision authorized a police inventory only of vehicles lawfully impounded or otherwise in lawful police custody. The record here, however, shows that the automobile in question was never impounded.

The practice of routine inventory of impounded vehicles has received glowing judicial praise. For example, in *United States v. Mitchell,* 458 F.2d 960, 961 (9th Cir.1972), the court noted:

[T]his was responsible, indeed laudable, police conduct to protect the property of the owner of a lawfully impounded car. If valuable property had been left on the seat and floor of the car, plainly visible to anyone peering through the window, the danger of theft would have been substantial. Not surprisingly, it appears that the locking and securing of impounded cars,

and the removal and inventory of valuable property in plain sight, are standard procedures. They certainly should be.

It is frequently stated that "[i]nventory searches have two purposes: to protect the vehicle and the property in it, and to safeguard the police or other officers from claims of lost possessions." *United States v. Ducker,* 491 F.2d 1190, 1192 (5th Cir. 1974). Whether or not one embraces the Chief Justice's assertion in *South Dakota v. Opperman, supra,* 428 U.S. at 369, 96 S.Ct. at 3097, of a third purpose, *i.e.,* "the protection of the police from potential danger," the primary rationale, applicable to the facts of the present appeal, is the need to protect the vehicle and its contents.

We are confronted, unlike *South Dakota v. Opperman, supra,* with the military inventory of an automobile legally parked on a military base, and not seized pursuant to any legal violation. The Government urges that the facts of this case, even absent a procedural regulation, suggest a military administrative need to inventory and secure appellant's valuable property, in light of his obvious inability to do so. We agree.

■ It cannot be gainsaid that on a military base, even in time of peace, the interests of orderly military administration require the inventory of the personal effects of, for example, an absentee. *United States v. Kazmierczak,* 16 U.S.C.M.A. 594, 37 C.M.R. 214 (1967). By analogy, routinely inventorying and securing an automobile containing visible and valuable items in an automobile legally parked on base is justifiable when the owner is detained in pretrial confinement. Furthermore, "[t]he necessity for safekeeping, especially in organizations comprised of transient personnel, is rooted in human nature. Unfortunately, we have not yet reached a stage of interpersonal relationships in which we can know, with absolute certainty, that unattended property will remain unmolested." *Id.* at 600, 37 C.M.R. at 220.

In the orderly and closed societal nature of military administration of justice appellant has been restrained in confinement pending resolution of charges against him.

Yet his vehicle remains parked within the military base itself with valuable items obviously vulnerable to any taker. Thus, we conclude that protection of the vehicle and its contents in the unique command setting is not inappropriately incumbent on a superior in appellant's chain of command. This protection is, of course, the prime rationale for the result in *South Dakota v. Opperman, supra,* and is particularly apposite to the military setting in this case heretofore demonstrated.

Concluding as we do that this inventory was administratively justified under the facts as presented, we must inquire whether it was properly conducted. Mil.R.Evid. 313(c) makes it clear that an administrative inventory conducted in a reasonable fashion does not violate the Fourth Amendment. In the case before us, the testimony reveals the valid administrative motivations for this inventory. As conducted, it was both orderly and minimal, and it follows that this inventory was reasonable. Thus, this assertion of error must be answered in the negative.

## II

We now turn to the stipulation entered into evidence without the inquiry mandated in *United States v. Bertelson, supra.* Appellant urges that this stipulation was, in fact, confessional in nature, so it could not be admitted absent the aforementioned inquiry. We disagree.

Here, there was a highly contested issue concerning the marihuana. At trial, appellant strongly argued that he was not in possession of the automobile where contraband items were discovered, and that in light of evidence of hidden keys in the vehicle, the Government had failed to establish exclusive possession beyond a reasonable doubt. We conclude that his stipulation did not "amount 'practically' to a judicial confession," and therefore, resolution of this case is governed by *United States v. Long,* 3 M.J. 400, 401 (C.M.A.1977). *Cf. United States v. Reagan,* 7 M.J. 490 (C.M.A. 1979). There was no error here.

We conclude that the granted issues have no merit. Accordingly, the decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge EVERETT and Judge COOK concur.