112

**UNITED STATES, Appellee,**

v.

**Sadat-Abdul JASPER, Private First Class U.S. Army, Appellant.**

No. 47,530.
CM 441979.

U.S. Court of Military Appeals.

May 28, 1985.

For Appellant: *Captain Bernard P. Ingold* (argued); *Colonel William G. Eckhardt, Lieutenant Colonel Arthur L. Hunt,* and *Captain Thomas J. Feeney* (on brief).

For Appellee: *Captain Robert L. Swann* (argued); *Colonel James Kucera, Lieutenant Colonel John T. Edwards, Major Patrick M. Flachs,* and *Captain Paul E. Jordan* (on brief); *Lieutenant Colonel Adrian J. Gravelle.*

*Opinion of the Court*

COX, Judge:

Contrary to his pleas, a general court-martial composed of officer members convicted appellant of desertion and stealing $95,000 in currency and also stealing, on another occasion, a gold necklace, in violation of Articles 85 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 885 and 921, respectively. His sentence to a dishonorable discharge, confinement at hard labor for 8 years and 6 months, forfeiture of all pay and allowances, and reduction to E–1, was approved by the convening authority. The Court of Military Review affirmed the findings and sentence. 16 M.J. 786 (1983).

This Court granted review of the following issue:[1]

> WHETHER THE MILITARY JUDGE AND THE ARMY COURT OF MILITARY REVIEW ERRED BY FINDING THAT THE INVENTORY OF THE APPELLANT'S ROOM DID NOT CONSTITUTE AN ILLEGAL SEARCH AND THAT SERGEANT KOS DID NOT EXCEED THE SCOPE OF THE SEARCH BY LOOKING INSIDE AN ENVELOPE AND READING A LETTER IT CONTAINED.

We hold that they did not and affirm.

While appellant was working as a mail clerk in February 1980 at Kelly Barracks, Federal Republic of Germany, a package containing $95,000 in American Express funds was stolen from the mails. Appellant was questioned concerning the theft and consented to a search of his off-post apartment. No evidence incriminating appellant was found at that time.

In early June, appellant was informed that charges were pending against him for adultery; he had been living with Private First Class Gwendolyn Battle, a female soldier who was not his wife. Although he apparently was still a suspect in the theft from the mails, he was not then charged with larceny. On June 11, 1980, appellant went on ordinary leave, flying by commercial airline to the United States to "work on a divorce." He failed to return to his unit upon termination of his leave on June 24, 1980.

On July 25, 1980, appellant's unit commander sent Staff Sergeant Bennie Kos, the unit supply sergeant, with an inventory team to appellant's off-post apartment to inventory his effects, to box them up, and to transport them to the unit for storage and safekeeping. They obtained a key to the apartment from another soldier with whom appellant had left a key when he went on leave.

While at the apartment, Sergeant Kos found an opened envelope addressed to Major John V. Lewin from Captain and Mrs. David V. Olson. On the face of the envelope was an insured sticker and a customs tag with a notation that the envelope contained a chain. Sergeant Kos looked inside the envelope and read the enclosed letter, which indicated that a gold necklace had been forwarded in the envelope. No necklace was then in the envelope. Sergeant Kos took the letter and envelope to the unit and turned them over to the authorities. On the motion to suppress the letter and envelope, Sergeant Kos testified, in part, as follows:

> When we first went in, we went in there and weren't quite positive whether the stuff belonged to him or the landlord. What we done was we started with all the clothing and this type of stuff first, and went through and inventoried the majority of all the small stuff and later on went back and picked up the large items after we confirmed it with the landlady of what stuff was hers.
>
> \* \* \* \* \* \*
>
> ... I found the letter in the bedroom. It was laying on the floor, right next to the closet. I was pulling something out of the closet and there were other papers laying on the bottom of the closet, and as I slid it out these papers came out, and when I reached down and finished picking up the rest of the papers and stuff I noticed it laying there. I picked it up and inspected it and found out that the item was registered and it was not addressed to Jasper or Battle.

Staff Sergeant Kos then read the letter:

> Because I was curious to find out what reasoning would he have of having the mail there, and that's when I found that it contained the necklace—or was to contain the necklace.
>
> \* \* \* \* \* \*
>
> I was not instructed to search for anything. We were sent there to inventory his personal effects by regulation.

The military judge denied the motion to suppress, finding that the evidence was lawfully obtained as a result of a reason-

---

1. The specified issue regarding credit for pretrial confinement is moot. *See United States v.* *Clark,* 17 M.J. 431 (C.M.A. 1984).

able inventory. The United States Army Court of Military Review held that the "commander has a legitimate interest in conducting an inventory of" a servicemember's personal property located in an off-post apartment outside the United States when the "servicemember ... is dropped from the rolls due to" unauthorized absence. The court below concluded that "[u]nder the facts of this case ... the inventory," including the reading of the letter, "was reasonable and did not exceed the scope of the command authority." 16 M.J. at 788. We agree with this conclusion.

 Evidence of a crime discovered during the course of a lawful inventory is admissible as a well-recognized exception to the warrant requirement. *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983); *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). The standard is reasonableness under all the facts and circumstances. *See also* Mil.R.Evid. 313(c); *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). This Court has had occasion to uphold admission of evidence seized as a result of the inventory of effects of an absent servicemember who was reassigned unexpectedly, *United States v. Law*, 17 M.J. 229 (C.M.A. 1984), and as a result of the inventory of personal effects of servicemembers who were placed in pretrial confinement, *United States v. Barnett*, 18 M.J. 166 (C.M.A. 1984); *United States v. Kazmierczak*, 16 U.S.C.M.A. 594, 37 C.M.R. 214 (1967). In each of these cases, the inventory was in accordance with service regulations and customs, which pro-

vides some assurance that the inventory is not a mere pretext for a prosecutorial motive. *Cf. United States v. Dulus*, 16 M.J. 324 (C.M.A. 1983) (in absence of procedural regulation, military administrative need justified inventorying and securing valuable property in automobile parked on military base when owner was in pretrial confinement).

The regulations on which trial counsel relied in this case [2] required the unit commander to inventory the personal effects, clothing, and government property of a servicemember dropped from the rolls of the unit. Although the current Army regulation specifically provides that the inventory procedures apply only if the absent servicemember resides in government quarters,[3] this limitation was not in effect at the time appellant was dropped from the rolls of his unit.

 Sergeant Kos testified that he had conducted several inventories of personal effects while in the unit. He was instructed to inventory appellant's effects, not to search for evidence of a crime. The evidence of record supports the conclusion that the unit commander's order to conduct an inventory of appellant's belongings and to transport them to the unit for storage and safekeeping was a good-faith effort to comply with service regulations and customs and not a subterfuge for an otherwise illegal search.

Unlike the inventory cases we have considered previously, the inventory here was of property located in an off-post private residence. Because the off-post apartment was located in a foreign country, however, a military interest existed in the effects left

---

**2.** Army Regulation (AR) 630–10, *Personnel Absences - Absence Without Leave and Desertion* (January 15, 1980), referring to AR 700–84, *Logistics-Issue and Sale of Personal Clothing* (February 15, 1980) and Procedure 5–25, Department of the Army Pamphlet 600–8, *Military Personnel Office-Management and Administrative Procedures* (May 31, 1971). Paragraph 12–12, AR 700–84, provides in part as follows:

*Clothing of absentees.* a. *Inventory.* The abandoned property of a member absent from the unit without authority will be inventoried as shown in (1) and (2) below.

(1) The unit commander will designate an officer, warrant officer, or noncommissioned officer (E5 through E9) to make the inventory. He or she will assure the inventory officer that the clothing abandoned actually belongs to the absent member.

Step 7a of Procedure 5–25, DA Pam 600–8, provides in part that when a servicemember is determined to be absent without authorized leave, the unit commander is required to "Inventory personal effects, clothing, and Government property charged to the individual ..."

**3.** Para. 12–12, AR 700–84, *Logistics-Issue and Sale of Personal Clothing* (June 1, 1983).

behind in the wake of appellant's continued absence.[4] There is an important governmental interest in safeguarding military property overseas, particularly in light of the rise in international terrorist activities. *See United States v. Alleyne*, 13 M.J. 331, 334–35 (C.M.A. 1982). As observed by the Court of Military Review, appellant may have left military property in the apartment which could be compromised during his absence. Also, the Government is subject to potential claims liability for the loss of and damage to personal property of a servicemember in private off-post quarters outside of the United States, a liability to which it is not subject when personal property is located in a servicemember's private quarters off-post in the United States. *See* 31 U.S.C. § 3721; para. 11–4a(2), Army Regulation 27–20, *Legal Services—Claims* (November 25, 1974). Under the circumstances of this case, there was a legitimate military need to inventory and secure appellant's property to protect the Government from the possibility of improper use of any dangerous or strictly military property left in the apartment, from claims for property damage or loss, and to protect appellant against loss or damage to his property.

■ Because we have determined that Sergeant Kos was properly in appellant's apartment to conduct an inventory, we must next consider whether he exceeded the scope of that inventory by looking inside the envelope and reading the enclosed letter. We held in *United States v. Brown*, 12 M.J. 420 (C.M.A. 1982), that opening a folded piece of paper in the accused's pocket exceeded the scope of the health-and-welfare inspection being conducted where none of the purposes of the inspection were served by that activity. In this case, however, the purposes of the inventory procedure were to identify, inventory, and transport appellant's belongings to the unit for storage. Although Sergeant Kos testified that he read the letter because he was "curious" after noticing that the envelope was registered and

was not addressed to either appellant or the other person known to have occupied the apartment, his characterization of his subjective motive is not controlling. Rather, an objective assessment of the facts and circumstances known to him at the time is necessary to determine the reasonableness of his actions. *Scott v. United States*, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978).

■ Sergeant Kos was there to inventory only property that actually belonged to appellant. The inventory team removed all property from the apartment that was determined to belong to appellant and left behind items determined to belong to the landlady. Because the envelope on its face did not belong to appellant and appeared to have contained something of value, opening the envelope and reading the letter was a reasonable way to establish ownership. *See United States v. Law, supra* at 239 ("[r]eading the note" in the suitcase "was a logical way to identify the suitcase's owner"); *United States v. Strahan*, 674 F.2d 96 (1st Cir.), *cert. denied*, 456 U.S. 1010, 102 S.Ct. 2304, 73 L.Ed.2d 1306 (1982) (when conducting inventory of van, permissible to read documents on floor to determine ownership).

We conclude that the envelope and letter were discovered during a valid inventory that was conducted in a reasonable manner and the evidence was admissible. Accordingly, the decision of the United States Army Court of Military Review is affirmed.

Judge FLETCHER did not participate.

EVERETT, Chief Judge (concurring):

Although in my view an inventory usually does not authorize examining the contents of a servicemember's mail, I agree that, under the rather unique circumstances of this case Sergeant Kos did not act improperly in performing the inventory. *Cf. United States v. Law*, 17 M.J. 229 (C.M.A. 1984). Therefore, the letter and envelope were properly admitted. *See* Mil. R.Evid. 313(c).

---

**4.** Appellant's absence continued for over eleven and one-half months, terminating only upon his apprehension.