**UNITED STATES, Appellee,**

v.

**Darryl ELLIS, Private U.S. Marine Corps, Appellant.**

**No. 53,657.**

**NMCM 85 1074.**

U.S. Court of Military Appeals.

Aug. 31, 1987.

For Appellant: *Lieutenant Christine M. Hayes*, JAGC, USNR (argued); *Lieutenant Commander Alvin L. McDonald*, JAGC, USN and *Lieutenant Roman A. Chojnacki*, JAGC, USNR (on brief).

For Appellee: *Lieutenant Larry D'Orazio*, JAGC, USNR (argued); *Captain Carl H. Horst*, JAGC, USN and *Lieutenant Robert G. Sosnowski*, JAGC, USNR (on brief); *Commander Michael P. Green*, JAGC, USN.

*Opinion of the Court*

SULLIVAN, Judge:

During October 1984, a special court-martial at Camp Pendleton, California, found appellant guilty of wrongfully possessing beer and drug paraphernalia in his barracks room and of wrongfully using marijuana, in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934, respectively. A military judge sentenced him to bad-conduct discharge, confinement for 2 months, and forfeiture of $397.00 pay per month for 2 months. This sentence was approved by the convening authority and affirmed by the Court of Military Review.

This Court granted the following issue for review:

WHETHER THE INSPECTING OFFICER EXCEEDED THE SCOPE OF

THE BARRACKS INSPECTION AND CONDUCTED AN UNLAWFUL SEARCH AND SEIZURE.

We hold that no unlawful search and seizure occurred in this case and affirm. *United States v. Jasper*, 20 M.J. 112 (C.M.A. 1985); *cf. United States v. Brown*, 12 M.J. 420 (C.M.A. 1982).

The record of trial shows that appellant's battalion had recently moved into a new building. The company commander (Dayton) wanted the platoon commanders or staff noncommissioned officers to go through the rooms of the building on a daily basis to check for general neatness and cleanliness. In furtherance of this purpose, Captain Dayton authorized an inspection of appellant's room as well as the remaining rooms occupied by the members of his platoon. Gunnery Sergeant McClure was given responsibility for inspecting the rooms, and the inspection was to be conducted on June 13, 1984. McClure was instructed by Captain Dayton to check the barracks for general "neatness and cleanliness" and to confiscate any unauthorized items found during the course of the inspection. Although McClure had not been told to look for any specific items of property, he "intended to keep...[his] eye out for ear protectors" which had been missing from his shop. He intended only to recover the ear protectors and not bring any disciplinary action against the person found in possession of this property.

Through a stipulation of expected testimony, Sgt. McClure described his inspection of appellant's room:

I inspected Private Ellis' room in the course of my inspection, and found two full bottles of beer in the drawer of his night stand. I removed the bottles from the drawer and placed them on Private Ellis' rack. As I did so, I noticed a strap hanging over the headboard of Private Ellis' bed. The bag itself, a small zipper bag, like a small shaving kit, was behind the headboard. I took the bag off the headboard, unzipped it, and dumped the contents on the bed. I did not know what was in the bag, and was not expecting to find anything in particular. I opened the bag because it was out of place and I simply wanted to see what was in the bag. I would not have opened the bag if it had been inside the wall locker. The bag contained what appeared to be drug paraphernalia. I stopped my inspection at that time.

The military judge found "by a preponderance of the evidence" that Captain Dayton's authorization for this "inspection was to insure that the room was clean and properly maintained...[t]he bunks...were made up and neat[,] [t]he walls...were not marred or damaged. The rooms were inspected for some missing ear protectors and the wall lockers and unusual items were checked out." Since "[t]he neatness and appearance of the bunk was a major part of the routine daily inspection," the military judge found that the zippered "bag hanging on the headboard was unusual enough to merit cursory inspection." He concluded, therefore, that the contents of the bag had been "seized properly" during "the inspection process."[1]

Appellant's basic contention is that Sergeant McClure's conduct in seizing his shaving kit, unzipping it, and dumping its contents on his bed exceeded the scope of the inspection ordered by Captain Dayton. He characterizes this government action as unreasonable and violative of his legitimate expectation of privacy in an area not covered by the inspection. *United States v. Brown, supra; United States v. Middleton*, 10 M.J. 123 (C.M.A. 1981). He concludes by asserting that, in the absence of probable cause, such conduct amounted to

---

1. The military judge also ruled that the discovery of an identification card and several rounds of ammunition during a subsequent search of appellant's room should be suppressed because "there was no probable cause to believe that" appellant would be in possession of drugs or contraband in the room. He also found that appellant had not given his voluntary consent to search the room. Based on this ruling, the convening authority elected to withdraw charges of unauthorized possession of ammunition and armed-forces identification cards, as well as an allegation that appellant made a false official statement to the effect that he lost his own ID card.

an illegal search and seizure, and its fruits must be suppressed. *See* Mil. R. Evid. 313, Manual for Courts-Martial, United States, 1984.

■ We have long held that military inspections ordered for the purpose of insuring sanitation and cleanliness, security, military fitness, or good order and discipline do not violate any reasonable expectation of privacy which a servicemember might otherwise have in the area to be inspected. *United States v. Moore*, 23 M.J. 295 (C.M.A. 1987); *United States v. Middleton, supra; United States v. Roberts*, 2 M.J. 31 (C.M.A. 1976). The inspection may nevertheless be transformed into a search requiring probable cause if it was conducted as a subterfuge for a search,[2] *United States v. Barnett*, 18 M.J. 166 (C.M.A. 1984); *United States v. Law*, 17 M.J. 229 (C.M.A. 1984), or was conducted in an unreasonable manner.

■ The reasonableness of an inspection is determined by whether the inspection is conducted in accordance with the commander's inspection authorization, both as to the area to be inspected (*United States v. Middleton, supra* ), and as to the specific purposes set forth by the commander for ordering the inspection (*United States v. Brown, supra* ). Even if the intrusion is not specifically authorized by the terms of the inspection, it may still be upheld if the purposes of the inspection would be served by the challenged activity. *United States v. Jasper, supra,* 20 M.J. 112, and *United States v. Law, supra.*

■ If the inspection is conducted in a manner which goes beyond the commander's order, either as to area or purpose, the servicemember retains an expectation of privacy in the particular property which is intruded upon. In such cases, the Government must then demonstrate that it had probable cause to search the area before the person conducting the search may proceed further. *Id.*

■ Applying these principles to the case at bar, we conclude that the inspection was reasonable and complied in all respects with the commander's inspection authorization and Mil. R. Evid. 313. The purpose of the inspection in this case was to check the rooms of the barracks for "neatness and cleanliness" and to confiscate any unauthorized property found in the rooms. The loose bag hanging from the headboard of appellant's bed detracted from the orderly appearance of the room such that it immediately attracted Sgt. McClure's attention. Moreover, a shaving kit with its myriad potential for sanitary problems was clearly an item which should be inspected for cleanliness. For these reasons, the military judge was correct in concluding that McClure acted reasonably when he seized the bag and conducted a cursory examination of its contents. *See United States v. Jasper* and *United States v. Law*, both *supra.* In view of the realities of military life, appellant had no reasonable expectation of privacy in an unlocked shaving kit left in an open area during a health and welfare inspection.[3] We hold, therefore, that Sgt. McClure acted properly in seizing the bag and examining its contents. *See generally New York v. Burger*, —— U.S. ——, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987).

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

COX, Judge (concurring in the result):

*See* my opinion in *United States v. Moore*, 23 M.J. 295, 299 (C.M.A. 1987).

---

2. Appellant has never alleged and the record does not show that the inspection was ordered as a subterfuge for a search because he or someone else in the barracks had been suspected of wrongful possession of drugs or paraphernalia at the time the inspection was ordered. For this reason, we have directed our attention only to the issue of whether the inspection was conducted in a reasonable manner.

3. If the bag had been left in a secured locker, we would have serious doubts as to whether an examination into its contents would have fallen within the scope of this inspection order. *Compare United States v. Portt*, 21 M.J. 333 (C.M.A. 1986), *with United States v. Middleton*, 10 M.J. 123 (C.M.A. 1981). Here, however, the bag was left in a place clearly covered by the commander's inspection order.