**UNITED STATES**

v.

**Staff Sergeant Gregory B. BURNEY,
United States Air Force.**

**Misc. Dkt. No. 2008–01.**

U.S. Air Force Court of Criminal Appeals.

12 June 2008.

Appellate Counsel for the Appellant: Gregory E. Pavlik (civilian) (argued), Lieutenant Colonel Mark R. Strickland, and Captain Tiffany M. Wagner.

Appellate Counsel for the United States: Captain Jamie L. Mendelson (argued), Colonel Gerald R. Bruce, and Major Matthew S. Ward.

Before FRANCIS, SOYBEL, and BRAND, Appellate Military Judges.

OPINION OF THE COURT

SOYBEL, Judge:

This case stems from an appeal by the Government under Article 62 UCMJ, 10 U.S.C. § 862. At trial, the military judge granted the appellee's motion to suppress drugs discovered in his car during an inspection of his vehicle at the gate as he entered Cannon Air Force Base, New Mexico.

*Background*

Senior Airman (SrA) Cagle and Airman First Class (A1C) Centeno, both assigned to the Security Forces Squadron, were conducting commander-directed random vehicle inspections from 0020 to 0120 on the evening of 20 May 2007, at the main gate of Cannon Air Force Base. The appellee's vehicle was one of the vehicles searched. When he approached the gate in his truck, the appellee was informed he was selected for a random inspection and asked if he consented. The appellee consented. In accordance with Air Force instructions, SrA Cagle asked the appellee to turn off his vehicle, open all inside and outside compartments, and to produce his military ID, his driver's license, car insurance and vehicle registration. SrA Cagle gave the documentation to A1C Centeno and then began to inspect the appellee's truck. Using a flashlight to assist him, SrA Cagle began a systematic search of the truck's interior which included looking under the seat, inside compartments and under floor mats. He also inspected the truck's bed.

While at the passenger's side door, SrA Cagle noticed a soft, pouch-type sunglass case in an open-faced compartment in the dash board under the radio. When he shined his flashlight on the case, the appellee said

"Oh, that's just a sunglass case." After the appellee stepped away from the truck to speak with A1C Centeno, SrA Cagle opened the draw-string of the closed pouch, shined his flashlight into the pouch and found pills that were later identified as illegal drugs. These pills were the evidence the military judge suppressed at trial.

In granting the defense's motion to suppress the drugs found in the pouch, the military judge focused on the scope of the inspection. He specifically found there was no written guidance for Security Forces personnel that distinguishes between the scope of an inspection and the scope of a search conducted pursuant to probable cause. He also found that Security Forces personnel believed .... "they could look inside anything found in the vehicle, to include purely personal items, such as a purse or glasses bag. Further, they seem to feel they can direct an occupant to leave personal items in the vehicle to be searched."

The military judge ruled that the search conducted by SrA Cagle, and the belief he could search personal items in the vehicle went "beyond the scope of what their directions contemplate they will inspect. That is, the inside of the vehicle, the center console, glove compartment, hood, trunk and any other locked compartment." The military judge also found the search constituted "an unreasonable violation of privacy under the Fourth Amendment." The fundamental meaning of the military judge's ruling is that Security Forces personnel may inspect inside all of a vehicle's compartments, but may not look inside any containers located in the car. We use the term "containers" to include items such as a purse or an eye-glass case.

Regarding the issue of consent, the military judge found the appellee's consent was "arguably" a "mere submission to the color of authority" or "acquiescence in an announced or indicated purpose to search...." In addition he found that "any consent arguably considered to be valid in this case would have been consent to conduct a lawful inspection.

Thus, the issue of consent begs the entire question[.]"

### Analysis

The standard of review on matters of law in this Article 62, UCMJ appeal is *de novo*. On questions of fact, we will not disturb the military judge's findings unless they are clearly erroneous. *United States v. Cossio*, 64 M.J. 254 (C.A.A.F.2007).

We hold the military judge erred in ruling, as a matter of law, Security Forces personnel conducting base entry control point inspections are limited to looking inside of a vehicle's compartments and may not inspect other containers in the vehicle. Specifically, in this case we hold it was reasonable under the Fourth Amendment [1] for Security Forces personnel to inspect inside the appellee's closed glasses pouch for contraband as part of conducting a lawful inspection of vehicles entering Cannon Air Force Base.

Evidence seized during a random inspection of vehicles entering a military installation is governed by Mil. R. Evid. 313, *Inspections and Inventories in the Armed Forces.*[2] Mil. R. Evid. 313(a) states that evidence obtained in accordance with the rule is admissible at trial when relevant and not otherwise inadmissible under the rules. Under the rule, inspections can be made of a whole or part of a unit, organization, installation, vessel, aircraft or vehicle.

Inspections at entry and exit points are specifically mentioned as an incident of command and are conducted to "determine and to ensure the security, military fitness, or good order and discipline of the ... installation". Mil. R. Evid. 313(b). Inspections are conducted in order to determine whether a unit is properly equipped, functioning properly, maintaining proper standards of readiness, sea or air worthiness, sanitation and cleanliness, and that personnel are present, fit and ready for duty. *Id.* "An inspection also includes an examination to locate and confiscate unlawful weapons and other contraband." *Id.* This rule authorizes examinations as intrusive as requiring the production of bodily fluids such as urine. *Id.* Clearly

---

1. U.S. CONST. amend IV.

2. The appellee never questioned the validity of the inspection itself.

this rule contemplates inspections of vehicles at entry points to prevent the introduction of drugs onto military installations.

Mil. R. Evid. 313(b) also states "inspections shall be conducted in a reasonable fashion." This concept of reasonableness has been discussed in other cases and has long been directly associated with a service member's expectation of privacy under the Fourth Amendment. *See United States v. Middleton,* 10 M.J. 123 (C.M.A.1981); *United States v. Ellis,* 24 M.J. 370 (C.M.A.1987). *See also Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). In the context of military readiness, a service member simply has a diminished expectation of privacy compared to a civilian in the private sector, and an inspection, as described in Mil. R. Evid. 313, is a recognized necessity given the unique nature and needs of a ready-to-fight armed force.

■ Importantly, the Supreme Court, in examining the concept of reasonableness of a search, recognized the need to balance the need for the search against the invasion of personal rights. "Courts must consider the scope of the particular intrusion, the manner in which it [was] conducted, the justification for initiating it and the place in which it [was] conducted." *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).[3] These four principles can be applied to the inspection conducted in the present case to determine whether it was reasonable.[4]

■ First the intrusion was very minimal. An eye-glass pouch is not normally considered a personal or private item. *A fortiori,* when one considers Mil. R. Evid. 313 specifically envisions the production of bodily fluids as a proper area for military inspections. Likewise, the manner in which the inspection was conducted was entirely proper. Cars were selected randomly, no property was destroyed, and it was conducted in a professional manner. The justification for conducting the inspection was entirely reasonable and in fact is recognized in Mil. R. Evid. 313. It was ordered by the wing commander who, according to the evidence, gave the formula to inspect every second vehicle for contraband, stolen government property and classified material. Thus, in order to ensure the security, military fitness and good order and discipline of the installation, the inspection was meant to protect the base from, among other things, drugs, which fall into the category of contraband. Finally, the search was conducted at an entry point, a practical and completely logical location to conduct inspections meant to prevent contraband from entering an installation.

Finally, given the purpose of an entry point inspection, we question what purpose would be served by limiting the scope of examination to a vehicle's opened compartments but not allowing a look into containers within that compartment or elsewhere in the vehicle. Such a limit would defeat the very purpose of any inspection and allow a free flow of contraband onto military installations as long as the material was retained within its own container. Given the purpose of inspections and the need to secure military installations from all kinds of harm, the very idea that containers within vehicles cannot be inspected is overbroad and unworkable. Inspecting containers in vehicles during a random gate search is a reasonable device to protect a military installation and does not violate one's privacy rights under the Fourth Amendment.

*Conclusion*

We find the military judge erred in ruling the inspection of the appellee's vehicle at the entry point to Cannon Air Force Base was unreasonable and violated the appellee's

---

3. The Fourth Amendment issues raised by the pretrial confinees in Bell involved strip searches of inmates after every contact visit and searches of cells without the inmates being present. Both issues involved searches based on circumstances amounting to less than probable cause. *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

4. The military judge did not apply these principles. Rather he based his ruling on what he perceived to be the Security Forces overstepping the instruction which directs all compartments in the vehicle be opened before the inspection begins. Rather than limiting the scope of the inspection, we interpret these instructions as providing a mechanism meant to facilitate the conduct of the inspection.

rights under the Fourth Amendment. Accordingly, the appeal of the United States is granted. The ruling of the military judge is set aside. The case is remanded to the trial court for further proceedings.

