# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
KERN, YOB, and ALDYKIEWICZ
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant BRUCE L. KELLY**
**United States Army, Appellant**

ARMY 20090809

Headquarters, Fort Drum
Andrew Glass, Military Judge
Lieutenant Colonel David M. Ward, Acting Staff Judge Advocate (pretrial)
Lieutenant Colonel Michael O. Lacey, Staff Judge Advocate (post-trial)

For Appellant: Captain A. Jason Nef, JA (argued); Colonel Mark Tellitocci, JA; Lieutenant Colonel Imogene M. Jamison, JA; Captain Jason Nef, JA (on brief).

For Appellee: Captain Edward J. Whitford, JA (argued); Major Ellen S. Jennings, JA; Major Amber J. Williams, JA; Captain Edward J. Whitford, JA (on brief).

27 March 2012

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

KERN, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his conditional pleas,[1] under Rule for Courts-Martial [hereinafter R.C.M.] 910(a)(2) of disobeying a general order and possession of child pornography, in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 934 (2006) [hereinafter UCMJ]. The military judge also convicted appellant, pursuant to his unconditional pleas, of additional charges of attempted larceny, larceny, and fraudulent claims, in violation of Articles 80, 121,

---

[1] R.C.M. 910(a)(2). "*Conditional pleas*. With the approval of the military judge and the consent of the Government, an accused may enter a conditional plea of guilty, reserving the right, on further review or appeal, to review of the adverse determination of any specified pretrial motion. If the accused prevails on further review or appeal, the accused shall be allowed to withdraw the plea of guilty…."

and 132, UCMJ.[2]  The military judge sentenced appellant to a bad-conduct discharge, confinement for eighteen months, and reduction to E-1.  The convening authority approved a bad-conduct discharge, confinement for seventeen months, and reduction to E-1.  Appellant's case is now before this court for review under Article 66, UCMJ.[3]

## FACTS

In April 2007, appellant was wounded in Iraq by a roadside bomb.  Appellant received initial medical treatment at a combat support hospital in Baghdad, Iraq and that same day was moved to Balad, Iraq and then transported to Landstuhl, Germany for further treatment.  Appellant later moved to Fort Bragg, North Carolina for additional medical treatment and eventually returned to duty at Fort Drum, New York, where his court-martial took place.

Following appellant's medical evacuation out of Iraq, an officer was appointed as a summary court-martial officer [hereinafter SCMO] in order to process and transport appellant's personal effects, including a Compaq Presario laptop computer, back to a person eligible to receive effects [hereinafter PERE].  The SCMO's appointment and the procedures he followed were pursuant to an All Army Activities Message [hereinafter ALARACT] from Headquarters, Department of Army.  The procedures included shipping appellant's personal effects from Iraq to the Joint Personnel Effects Depot [hereinafter JPED] located in the United States at the Aberdeen Proving Ground military base in Maryland.  Prior to the ALARACT, only the personal effects of dead or missing soldiers, not wounded personnel, were sent to the JPED.  Following standard operating procedures,[4] JPED personnel inspected appellant's computer for classified material and material that could be the source of embarrassment to a recipient of the computer.  This latter inspection was conducted under the search terms:  "gore, porn, and inappropriate," and child pornography and adult pornography were discovered on the computer.  The computer was then turned over to law enforcement personnel who obtained a search authorization and conducted a thorough search of the laptop computer and collected

---

[2] The misconduct for these additional charges occurred while appellant was pending court-martial for possession of child pornography and was assigned duties as the unit travel clerk.  In this capacity, he created false travel orders and submitted false travel vouchers to steal money from the U.S. Government. These charges are unrelated to the suppression motion at issue in this opinion.

[3] Oral argument in this case was heard in Washington, D.C. on 15 February 2012 at The George Washington University Law School as part of the "Outreach Program" of the United States Army Court of Criminal Appeals.

[4] The JPED Process Manual provides an inventory process which includes screening for and removing classified material and items that may cause embarrassment or added sorrow if forwarded to an eligible recipient.

evidence forming the basis for Charges I and II, possession of child pornography and violation of a lawful general order.

At trial, appellant moved to suppress the evidence found on his laptop computer as an unlawful search and seizure in violation of his Fourth Amendment right to privacy. The military judge denied appellant's motion to suppress the evidence. Subsequently, appellant entered a conditional guilty plea to Charges I and II. On appeal, appellant raises a single assignment of error pertaining to the military judge's denial of the suppression motion.

## LAW AND DISCUSSION

We review the military judge's ruling on a suppression motion under an "abuse of discretion" standard. *United States v. Gallagher*, 66 M.J. 250, 253 (C.A.A.F. 2008). An "abuse of discretion" occurs when the military judge's findings of fact are clearly erroneous or if the military judge erroneously applies the law. *United States v. Rader*, 65 M.J. 30, 32-33 (C.A.A.F. 2007). In this case, the military judge set out detailed findings in his denial of the motion to suppress. Upon our review of the record, we accept the military judge's factual findings, and with minor exception, his legal conclusions as well. The discrepancy we have with the military judge's legal conclusion is in his finding that the ALARACT incorporated its provisions in Army Reg. 638-2, Care and Disposition of Remains and Disposition of Personal Effects [hereinafter AR 638-2] (22 December 2000), Joint Publication 4-06, Mortuary Affairs in Joint Operations (5 June 2006), and several other publications. This is an error because there is a separate regulatory restriction against disseminating policy and procedure revisions by electronic message.[5] Moreover, it is questionable whether an Army message would have authority to change a Joint publication. However, these errors are inconsequential, because we find the military judge applied the law correctly in his separate finding, that the ALARACT defined the SCMO's duties as consistent with AR 638-2:

> 7. ALARACT Message 139/2006 mandated that PE [personal effects] collection, inventory, safeguarding, and disposition were a command responsibility and adopted the procedures used in AR 638-2 for the processing of PE for medically evacuated Service Members. In particular, the message required that the processing of PE for medically

---

[5] *See* Army Reg. 25-30, The Army Publishing Program [hereinafter AR 25-30], para. 2-3 (27 March 2006): "An electronic message will not be used to disseminate new or revised DA, agency, or command policy or procedures. Electronic messages may be used to notify commands and agencies of impending new policy and procedures, changes, or revisions when it is immediately necessary to maintain national security, ensure the safety or well being of the soldiers, or to avoid legal action against the DOD." *See also* AR 25-30, para. 3-5, and Dep't of Army, Pam. 25-40, Army Publishing: Action Officer Guide, para. 12-5 (7 November 2006).

evacuated individuals include inventory of PE by a SCMO in theater. The message stated that AR 638-2 defined the SMCO's duties.

(App. Ex. XXVII, para. 7).

It is clear that the intent of the ALARACT was to provide guidance to commanders in deployed theaters on how to process and transport personal effects of those soldiers who were medically evacuated out of theater. The ALARACT also plainly authorized inventories of the personal effects of medically evacuated soldiers. In addition, by citing AR 638-2 as a reference, it is also evident that the ALARACT intended the use of the procedures already in place for deceased and missing soldiers. These procedures involved appointment of a SCMO and sending the personal effects to the JPED. Although the applicability of AR 638-2 was technically only for processing the personal effects of deceased and missing soldiers, we find no prohibition against the Department of the Army mandating that those same procedures be utilized to process the personal effects of wounded soldiers. In fact, in the context of the type of injuries commonly sustained in the current deployed environments it made perfect sense to do so. It is well known that many injuries in the current conflicts are caused by roadside bombs resulting in traumatic brain injuries and loss of limbs. These injuries oftentimes render victims unconscious and require lengthy hospital stays and rehabilitation. Therefore, it is certainly reasonable and serves a legitimate purpose for the Army to inventory and process the personal effects of medically evacuated soldiers with the likelihood that those effects will go to PERE instead of directly back to the injured soldiers.

Moreover, we agree with the military judge that the legal underpinning for the eventual seizure of the criminal evidence against the appellant was under Military Rule of Evidence 313(c). As such, the seizure was lawful as long as the inventory was conducted reasonably, and its primary purpose was administrative and not with the primary purpose of obtaining evidence for use in a court-martial or in other disciplinary proceedings. That is precisely the case here. As the military judge properly found:

14. The initial review of the accused's Compaq Presario computer was conducted by the JPED under its established administrative procedure at that time. The primary purpose for the search of the accused's computer was to remove classified material, if any, and to discover any items which might cause the recipient of the accused's PE additional embarrassment or sorrow so that they might be removed before forwarding the accused's PE. I find that the search of the computer was an attempt to accomplish this reasonable government purpose and was conducted in a reasonable manner.

15. At the time of JPED's review of the accused's computer, there is no evidence that any one in the chain of command, CID, the JPED, or any other government actor suspected the accused had any illegal items

4

in any of his PE. The inventory of the accused's PE and, specifically, his personal computer, was conducted to accomplish JPED's administrative purpose and was not intended to discover any illegal activity or for the purpose of obtaining evidence for use in a trial by court-martial or in other disciplinary proceedings.

(App. Ex. XXVII, paras. 14 and 15).

We reject appellant's argument that in this particular case the inventory, which included a secondary search for pornographic material, was unreasonable because it was not conducted for any legitimate government purpose. Appellant argues that because the government knew the personal effects were going back to the appellant, there was no reason to conduct a search in order to remove items that might cause sorrow or embarrassment to the recipient. Under our review, however, we do not find in the record that the government knew for certain that the personal effects, including the laptop computer, would be going directly to appellant, thus avoiding the question of whether or not the appellant could be embarrassed by his own possessions. Although there is some evidence that the government was rushing the case in order to get the effects back to appellant, we do not find that it was clear that the personal effects would be going to him directly or to him through a PERE. The test used to assess the conduct of the inventory is whether it was reasonable under all the circumstances, and we concur with the military judge in this case that the inventory was conducted reasonably. *United States v. Jasper*, 20 M.J. 112 (C.M.A. 1985). In fact, only if it was absolutely clear that personal effects would be going directly to appellant could we get to an issue over whether the secondary search might not have been reasonable. It is doubtful, however, that this scenario could ever occur unless an injured soldier actually appeared at the doors of the JPED, and that is not the case here.

We further disagree with appellant's contention that a medical services regulation, Army Reg. 40-400, Patient Administration (23 October 2006), precluded appellant's personal effects from being processed in accordance with Army Reg. 638-2. In our review of that medical services regulation, we find that it only covers the processing of personal effects that accompany a soldier in the medical treatment facility, not the personal effects that are left back in his sleeping quarters.

For all of the aforementioned reasons, we find that the military judge did not abuse his discretion in denying appellant's suppression motion.

## CONCLUSION

On consideration of the entire record, we hold the findings of guilty and sentence approved by the convening authority correct in law and fact. Accordingly, the findings of guilty and the sentence are AFFIRMED.

5

Judge YOB and Judge ALDYKIEWICZ concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court