UNITED STATES, Appellee

v.

Bruce L. KELLY, Staff Sergeant
U.S. Army, Appellant

No. 12-0524

Crim. App. No. 20090809

United States Court of Appeals for the Armed Forces

Argued February 26, 2013

Decided May 23, 2013

ERDMANN, J., delivered the opinion of the court, in which BAKER, C.J., STUCKY and RYAN, JJ., and COX, S.J., joined.

Counsel

For Appellant:  Captain Ian M. Guy (argued); Colonel Patricia A. Ham, Lieutenant Colonel Jonathan F. Potter, and Major Jacob D. Bashore (on brief).

For Appellee:  Captain Sean Fitzgibbon (argued); Lieutenant Colonel Amber J. Roach, Major Catherine L. Brantley, and Captain Edward J. Whitford (on brief).

Amicus Curiae for Appellant:  Michelle L. Behan (law student) (argued); David C. Potts (law student), Matthew W. Randle (law student), and Paul D. Bennett, Esq. (supervising attorney) (on brief) -- for the University of Arizona James E. Rogers College of Law.

Military Judge:  Andrew Glass


**This opinion is subject to revision before final publication.**

United States v. Kelly, No. 12-0524/AR

Judge ERDMANN delivered the opinion of the court.

A military judge sitting as a general court-martial convicted Staff Sergeant (SSgt) Bruce L. Kelly, pursuant to his conditional pleas, of disobeying a general order and possession of child pornography, in violation of Articles 92 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 934 (2006). The military judge also convicted Kelly, pursuant to his unconditional pleas, of attempted larceny, larceny, and fraudulent claims, in violation of Articles 80, 121, and 132, UCMJ, 10 U.S.C. §§ 880, 921, 932 (2006). The military judge sentenced Kelly to confinement for eighteen months, reduction to E-1, and a bad-conduct discharge. The convening authority approved confinement for seventeen months, reduction to E-1, the bad-conduct discharge, and waived automatic forfeitures for six months. The United States Army Court of Criminal Appeals (CCA) affirmed the findings and sentence. United States v. Kelly, No. ARMY 20090809 (A. Ct. Crim. App. Mar. 27, 2012).[1]

"The Fourth Amendment of the Constitution protects individuals, including servicemembers, against unreasonable searches and seizures." United States v. Long, 64 M.J. 57, 61 (C.A.A.F. 2006). Official intrusions into areas where there is

---

[1] We heard oral argument in this case at the University of Arizona James E. Rogers College of Law as part of the court's "Project Outreach." See United States v. Mahoney, 58 M.J. 346, 347 n.1 (C.A.A.F. 2003). This practice was developed as part of a public awareness program to demonstrate the operation of a federal court of appeals and the military justice system.

United States v. Kelly, No. 12-0524/AR

a reasonable expectation of privacy "require search authorization supported by probable cause, unless they are otherwise lawful under the Military Rules of Evidence (M.R.E.) or the Constitution of the United States as applied to members of the armed forces." Id. We granted review of this case to determine whether the search of Kelly's personal computer was a valid inventory or inspection under M.R.E. 313(b) or (c).[2] We hold that the search was not a valid inventory or inspection and therefore reverse the decision of the CCA.

---

[2] We granted review of the following issues:

  I. Whether the military judge abused his discretion when he failed to suppress evidence of child pornography discovered on Appellant's personal computer in the course of an unreasonable search conducted to find contraband after Appellant was wounded in Iraq and medically evacuated to the United States.

  II. Whether the Army Court erred in creating a new exception to the Fourth Amendment when it held that the Government's search of Appellant's personal computer was reasonable because the Government was not "certain" or "absolutely clear" that it would be returned to the wounded-warrior Appellant.

United States v. Kelly, 71 M.J. 403, 403-404 (C.A.A.F. 2012) (order granting review). On February 4, 2013, we specified the following issue:

    Whether the examination of the contents of Appellant's computer was an unlawful inspection under M.R.E. 313(b).

United States v. Kelly, 72 M.J. 82 (C.A.A.F. 2013) (order specifying issue).

3

I.    Factual Background

While serving in Iraq, Kelly was wounded when his vehicle hit an improvised explosive device.  Because of his injuries, Kelly was medically evacuated out of Iraq.  On April 30, 2007, two days after Kelly was injured, a summary court-martial officer (SCMO) was appointed and tasked with inventorying Kelly's personal belongings.  The inventory included two laptops -- Kelly's personal laptop and a second laptop which belonged to the Army.  Once the inventory was complete, the SCMO sent Kelly's personal effects (PE) to Mortuary Affairs at Camp Stryker in Iraq.  Mortuary Affairs, in turn, sent Kelly's PE to the Joint Personal Effects Depot (JPED) at Aberdeen Proving Grounds, Maryland.

When Kelly's personal laptop arrived at JPED, it was given to SSgt RM, a computer examiner, for analysis.  At the time of Kelly's injury, JPED carried out its review of his PE pursuant to Dep't of the Army, Reg. 638-2, Deceased Personnel, Care and Disposition of Remains and Disposition of Personal Effects para. 20-6 (Dec. 22, 2000) (AR 638-2).  SSgt RM was told that it was a "rush case" because the laptop belonged to a wounded soldier who wanted his PE back.  SSgt RM first searched the laptop for classified material, pursuant to AR 638-2, para. 20-6, which provides:

> All documents and any sealed material in the PE will
> be reviewed to ensure proper safeguarding of military

> information.  Classified material and material
> warranting classification will be withdrawn and
> submitted to the intelligence officer for review and
> proper disposition.  Material suitable for release
> will be returned by the intelligence officer for
> disposition as PE.

No classified material was found on the laptop.

According to SSgt RM's sworn statement, after the search for classified material, "the next step was to search for Videos which we the Media Center check for the following categories: Gore, Innappropriate [sic], and Porn."  This search was based on AR 638-2, para. 20-14.a., which provides:

> Inappropriate items that may cause embarrassment or
> added sorrow if forwarded to the recipient will be
> withdrawn and destroyed.  Categories include, but are
> not limited to, items that are mutilated, burned,
> bloodstained, damaged beyond repair, obnoxious,
> obscene, or unsanitary.  Correspondence (opened mail),
> papers, photographs, video tapes, and so forth must be
> screened for suitability. . . . Unsuitable items will
> be removed and destroyed.

The search for "gore," "inappropriate," and "porn," yielded a folder labeled "Porn videos and porn pictures."  At that point, SSgt RM discovered what he believed was child pornography.  He notified his supervisor who confirmed that the videos contained child pornography.

The noncommissioned officer in charge (NCOIC) of JPED explained that if child pornography is discovered during the search of a laptop, JPED protocol called for the following procedures:

> As soon as one of the examiner[s] find suspected child pornography and the Soldier is wounded we notify CID. If the owner of the computer was killed in action we sanitaze [sic] the hard drive before turning [sic] the property to the family. If it happens to be adult pornography we just sanitize the computer and send it to the family or the owner. The reason we search computer [sic] is to ensure there is no classified material within the hard drive that can later compromise the mission.

In accordance with this protocol, Kelly's computer was sent to Aberdeen Proving Grounds Criminal Investigation Division Command Office (CID). On June 28, 2007, a CID Special Agent submitted an affidavit to a military magistrate for a search authorization for Kelly's personal computer. The basis for the search authorization was the child pornography discovered as a result of the initial search conducted by JPED. The magistrate authorized the search and CID located the images of child pornography on Kelly's computer.

## II. Procedural Background

At his court-martial, Kelly filed a motion to suppress the evidence of child pornography obtained from his computer. Kelly argued that he had a reasonable, subjective expectation of privacy in his personal computer; the Government had no legitimate interest in reviewing wounded and killed soldiers' PE for pornography; and the "good faith" exception to the Fourth Amendment exclusionary rule was not applicable. During arguments on the motion, defense counsel also argued that the Government's basis for the search, AR 638-2, was not applicable

to Kelly because he was wounded, not deceased or missing. AR

638-2 specifically provides that it does not apply to "[t]he PE

of soldiers who are patients in medical treatment facilities and

not deceased." AR 638-2, para. 17-1.b.(7).

The Government opposed the motion arguing AR 638-2 was

modified by ALARACT 139/2006 to include wounded soldiers as well

as deceased or missing soldiers.[3] Due to this modification, the

Government argued that AR 638-2 was applicable to Kelly's

circumstances and that SSgt RM's search was a lawful inventory

under M.R.E. 313(c). Alternately, the Government suggested that

the inspection was a lawful search under M.R.E. 314(k), the

"catch-all provision."[4]

In denying the Motion to Suppress, the military judge held:

Prior to July 2007, the JPED processed the [PE] for
Service Members who were killed or missing in action.
. . . In July 2006, these[] procedures were modified
by ALARACT Message 139/2006, Policies and Procedures
for the Handling of Personal Effects (PE) and
Government Property, DTG 210236Z Jul 06. This message
modified the processing of PE to include individuals
who were medically evacuated from the CENTCOM theater

---

[3] Dep't of the Army, All Army Activities Message 139/2006, Policies and Procedures for the Handling of Personal Effects (PE) and Government Property (July 2006) (ALARACT). ALARACT was an electronic message, dated July 2006, entitled, "POLICIES AND PROCEDURES FOR THE HANDLING OF PERSONAL EFFECTS (PE) AND GOVERNMENT PROPERTY." The purpose of the message was to "provide guidance for processing personal effects (PE) and Government property from the CENTCOM theater of operations for soldiers . . . who are killed in action (KIA), missing in action (MIA), or medically evacuated."

[4] At no point in the proceedings has the Government challenged Kelly's reasonable, subjective expectation of privacy in his personal computer.

7

> of operations.  The message incorporated its
> provisions into AR 638-2, Joint Publication 4-06, and
> several other publications.

Emphasis added.  The military judge cited M.R.E. 313(c) and held

that "the search of the computer was an attempt to accomplish

[the] reasonable government purpose and was conducted in a

reasonable manner."  After the denial of the defense's motion to

suppress the evidence seized from the laptop, Kelly entered

conditional guilty pleas to possession of child pornography and

wrongfully possessing pornography in violation of a lawful

general order.

On appeal to the CCA, Kelly challenged the military judge's

ruling on the motion to suppress.  The lower court accepted the

military judge's findings of fact and conclusions of law, but

noted:

> The discrepancy we have with the military judge's
> legal conclusion is in his finding that the ALARACT
> incorporated its provisions in [AR] 638-2 . . . and
> several other publications.  This is an error because
> there is a separate regulatory restriction against
> disseminating policy and procedure revisions by
> electronic message.  Moreover, it is questionable
> whether an Army message would have authority to change
> a Joint publication.

Kelly, No. ARMY 20090809, slip op. at 3.

In a related footnote, the CCA elaborated:

> See Army Reg. 25-30, The Army Publishing Program
> [hereinafter AR 25-30], para. 2-3 (27 March 2006): "An
> electronic message will not be used to disseminate new
> or revised [Department of the Army], agency, or
> command policy or procedures.  Electronic messages may
> be used to notify commands and agencies of impending

> new policy and procedures, changes, or revisions when it is immediately necessary to maintain national security, ensure the safety or well being of the soldiers, or to avoid legal action against the [Department of Defense]." See also AR 25-30, para. 3-5, and Dep't of Army, Pam. 25-40, Army Publishing: Action Officer Guide, para. 12-5 (7 November 2006).

Id. at 3 n.5. Although noting these procedural inconsistencies, the CCA found them to be "inconsequential" because the military judge "applied the law correctly in his separate finding, that the ALARACT defined the SCMO's duties as consistent with AR 638-2." Id. at 3. The CCA held that the ALARACT "plainly authorized inventories of the [PE] of medically evacuated soldiers." Id. at 4. The CCA rationalized that although AR 638-2 was "technically only for processing the personal effects of deceased and missing soldiers," there was "no prohibition" on mandating those same procedures for PE of wounded soldiers because "in the context of the type of injuries commonly sustained in the current deployed environments" including, "traumatic brain injuries and loss of limbs," victims may be "unconscious and require lengthy hospital stays and rehabilitation." Id. The CCA found the inventory was lawful as it was conducted reasonably and its primary purpose was administrative. Id.

### III. Discussion

#### a. Arguments on Appeal

Before this court Kelly argues that the Government violated his Fourth Amendment rights when it searched his personal laptop without a lawful search authorization or a recognized exception. Kelly urges the court to reject the Government's assertion that the search was a legitimate inventory. Kelly contends that the Government's justification for searching his computer was AR 638-2, which is only applicable to deceased and missing soldiers. Further, Kelly argues that the military judge and the CCA erred when they found the Government had a legitimate interest in searching the personal effects of wounded soldiers to protect others from embarrassing material. Finally, Kelly argues that JPED's actions were not ordered by his commander in order to ensure the military fitness or readiness of the unit and thus do not amount to an inspection under M.R.E. 313(b).

The Government urges us to affirm the CCA, arguing that the military judge correctly applied M.R.E. 313(c) when he found that JPED's search was conducted to accomplish an administrative purpose, rather than discover illegal activity. Additionally, the Government argues that JPED's process "fits comfortably within the common understanding of an inventory." The inventory of Kelly's computer, the Government contends, was in line with the Government's interest in avoiding the release of classified

information and preventing additional sorrow or embarrassment. Regarding the specified issue, the Government argues that JPED's actions amount to a lawful inspection under M.R.E. 313(b) based on the rationale set forth in AR 638-2.

b. Law

"We review a military judge's decision to suppress or admit evidence for an abuse of discretion." United States v. Miller, 66 M.J. 306, 307 (C.A.A.F. 2008) (citations omitted). "A military judge abuses his discretion when his findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." Id. (citations omitted).

"The Fourth Amendment provides in relevant part that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." United States v. Jones, 132 S. Ct. 945, 949 (2012) (internal quotation marks omitted). However, "[t]he Fourth Amendment does not protect against all searches." United States v. Michael, 66 M.J. 78, 80 (C.A.A.F. 2008). "Rather, it proscribes only unreasonable searches. 'The ultimate standard set forth in the Fourth Amendment is reasonableness.'" Id. (quoting Cady v. Dombrowski, 413 U.S. 433, 439 (1973)).

11

"Official intrusions into protected areas in the military require search authorization supported by probable cause, unless they are otherwise lawful under the Military Rules of Evidence (M.R.E.) or the Constitution of the United States as applied to members of the armed forces." Long, 64 M.J. at 61. Pursuant to M.R.E. 313(a), "[e]vidence obtained from inspections and inventories in the armed forces conducted in accordance with this rule is admissible at trial when relevant and not otherwise inadmissible under these rules."

1. Applicability of AR 638-2

The Summary of AR 638-2 provides "[t]his regulation prescribes policies for the care and disposition of remains of deceased personnel for whom the Army is responsible (part I, chaps 1-16) and for the disposition of personal effects of deceased and missing personnel (part II, chaps 17-20)." AR 638-2, at i. As discussed supra, Chapter 17 explicitly states that AR 638-2 does not apply to "soldiers who are patients in medical treatment facilities and not deceased." AR 638-2, para. 17-1.b.(7).

Before this court, the Government has abandoned its original position that the ALARACT "modified" AR 638-2, instead arguing that the CCA "reasonably interpreted its regulations and this Court should adopt that interpretation." The Government

goes on to suggest that "it is reasonable to apply [AR 638-2] to living, wounded Soldiers."

The suggestion that the Army could informally alter AR 638-2 by reference to the ALARACT is clearly incorrect. The ALARACT, to the extent that it is intelligible at all, did not amend the Army procedures and no one who was otherwise authorized to impose such procedures by directive or order did so. The method adopted by the Army to apply the provisions of AR 638-2 to wounded or medically evacuated soldiers through the ALARACT violated the Army's own procedure for adopting or amending an Army regulation. See Dep't of the Army, Reg. 25-30, Information Management: Publishing and Printing, The Army Publishing Program paras. 2-3.a.(2), 3-5. (Mar. 27, 2006) ("An electronic message will not be used to disseminate new or revised [Dep't of the Army], agency, or command policy or procedures.").

Equally flawed is the CCA's implicit conclusion that, while the Army could not amend the regulation through an electronic message, it could effectively achieve the same result by independently mandating the use of the procedures found in AR 638-2 for processing PE of deceased and missing soldiers to the PE of wounded and medically evacuated soldiers. Not only was the manner of the attempted amendment improper, the application

13

of AR 638-2 to wounded soldiers directly conflicts with the existing provisions of the regulation.

Further, while the Army's attempt to apply AR 638-2 to wounded soldiers was procedurally flawed and internally inconsistent, it also generally conflicts with the provisions of AR 40-400, Medical Services, Patient Administration, that provides guidance on the processing of PE for wounded soldiers who are admitted for treatment in medical facilities.[5]

Irrespective of the Army's noncompliance with its own procedural requirements, the military judge's ruling on the admission of the evidence relied on the inventory exception set forth in M.R.E. 313(c), and the Government argues that JPED's search of Kelly's laptop can be classified as either an

---

[5] Paragraph 4-4 of AR 40-400 states that "[w]hen a patient is admitted, his or her personal effects will be inventoried immediately and Government-owned weapons and other organization equipment will be returned to the patient's assigned unit . . . ." Dep't of the Army, Reg. 40-400, Medical Services, Patient Administration para. 4-4. (Oct. 23, 2006) (AR 40-400). AR 40-400, paragraph 4-5, entitled "Personal effects," provides that:

> Patient clothing and baggage will be secured based upon patient needs. . . . When clothing and effects are accepted in the baggage room, an original and two copies of DA Form 4160 will be prepared. The patient's personal property, other than money or valuables, will be inventoried and listed on all copies of DA Form 4160. . . . Upon discharge, the patient and the clerk will sign the spaces on the reverse of the original copy of DA Form 4160 which is then dated and filed. . . . If a patient dies, absents him or herself without leave, deserts, or otherwise unaccountably departs from the hospital, his or her effects will be provided to the [SCMO] as prescribed by AR 638-2.

inventory or an inspection.  Thus, we will we review the Government's actions under traditional criteria applicable to inventories and inspections under M.R.E. 313.

2.  JPED's Search as an Inventory under M.R.E. 313(c)

"The justification for conducting an inventory is that it is necessary to protect the property rights of the person and protect the government against false claims that property, which it has seized, has been damaged, lost, or destroyed."  1 Stephen A. Saltzburg et. al., Military Rules of Evidence Manual § 313.02[3][b] (7th ed. 2011) (citing Florida v. Wells, 495 U.S. 1 (1990); Colorado v. Bertine, 479 U.S. 367 (1987)).[6]  "[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence."  Wells, 495 U.S. at 4.

M.R.E. 313(c) addresses inventories and provides:

> Unlawful weapons, contraband, or other evidence of crime discovered in the process of an inventory, the primary purpose of which is administrative in nature, may be seized.  Inventories shall be conducted in a reasonable fashion. . . .  An examination made for the primary purpose of obtaining evidence for use in a trial by court-martial or in other disciplinary proceedings is not an inventory within the meaning of this rule.

---

[6] We note that these justifications, originally set forth in South Dakota v. Opperman, 428 U.S. 364, 369 (1976), were not intended to be exclusive, particularly in other contexts. Regardless, under no circumstances may an inventory be a ruse for general rummaging.  See Wells, 495 U.S. at 4.

This court has upheld inventories conducted "in accordance with service regulations and customs, which provides some assurance that the inventory is not a mere pretext for a prosecutorial motive." United States v. Jasper, 20 M.J. 112, 114 (C.M.A. 1985). "[I]t is not an unreasonable search to conduct a shakedown of [an] individual's effects to determine his readiness to carry out his military duties." United States v. Kazmierczak, 16 C.M.A. 594, 600, 37 C.M.R. 214, 220 (1967) (internal quotation marks omitted). An "obvious and legitimate reason for [the inventory exception] is manifest in the nature of the military unit." Id. (noting the impact an absent member has on a unit and the need for inventorying the personal effects of an absent member).

It appears that the initial inventory of Kelly's belongings in Iraq by the SCMO was a proper inventory. The SCMO secured Kelly's PE and properly made an accounting of Kelly's belongings. The SCMO's sworn statement indicates that he inventoried Kelly's belongings and "personally ensured" that they were dropped at the Mortuary and he was given a memo that served as a "hand receipt" which was eventually provided to CID.

However, JPED's search for "gore," "inappropriate," or "porn" does not fall within M.R.E. 313(c)'s inventory exception.[7]

---

[7] As it is not part of the granted issues, we do not address the propriety of JPED's initial search of Kelly's computer for classified information.

16

While "inventories pursuant to standard police procedures are reasonable . . . the relevant test is . . . the reasonableness of the seizure under all the circumstances."  South Dakota v. Opperman, 428 U.S. at 372-73.  In order to determine whether a search is reasonable, we must "balance its intrusion . . . against its promotion of legitimate governmental interests."  Illinois v. Lafayette, 462 U.S. 640, 644 (1983) (quoting Delaware v. Prouse, 440 U.S. 648, 654 (1979) (internal quotation marks omitted)).  "The test of reasonableness cannot be fixed by per se rules; each case must be decided on its own facts."  Opperman, 428 U.S. at 373 (citation omitted).

SSgt RM's search of Kelly's laptop for "gore," "inappropriate," and "porn" amounted to a specific search for contraband which, once discovered, was turned over to CID pursuant to JPED's established protocols.  The search was not conducted to ascertain Kelly's "readiness to carry out his military duties."  See Kazmierczak, 16 C.M.A. at 600, 37 C.M.R. at 220.  SSgt RM testified that his review of the laptop was a "rush job" because Kelly, who was medically evacuated out of Iraq, "wanted his PE back."  Thus, there was no concern over Kelly's ability to carry out his military duties and his PE was to be returned directly to him.  On balance, the government intrusion into Kelly's privacy interest in his computer was not

outweighed by "legitimate governmental interests."  See

Lafayette, 462 U.S. at 644.

Further, JPED's search under the auspices of AR 638-2 did

not produce anything resembling an inventory -- once the

articles were searched they were simply shipped out.  This is in

conflict with the primary purpose of a traditional inventory.

See, e.g., Wells, 495 U.S. at 4 ("[t]he policy or practice

governing inventory searches should be designed to produce an

inventory.")  Indeed, even if AR 638-2 was applicable under the

circumstances, it does not classify the search for inappropriate

items as an inventory.  The section of the regulation under

which SSgt RM conducted the search is titled "Destruction of PE"

and simply states that inappropriate items will be "withdrawn

and destroyed."  AR 638-2, para. 20-14.a.  The search of Kelly's

laptop for "gore," "inappropriate," and "porn," was not an

inventory as proscribed by M.R.E. 313(c).

3.  JPED's Search as an Inspection under M.R.E. 313(b)

The Government also argues that the search of Kelly's

laptop for "gore," "inappropriate," and "porn" was conducted

pursuant to a valid inspection under M.R.E. 313(b).  "The

President . . . has authorized commanding officers to conduct

inspections of their units -- 'as an incident of command' --

when 'the primary purpose . . . is to determine and to ensure

the security, military fitness, or good order and discipline of

the unit.'"  United States v. Jackson, 48 M.J. 292, 293

(C.A.A.F. 1998) (quoting M.R.E. 313(b)).  "With respect to the

expectations of privacy under the Fourth Amendment . . . during

a traditional military inspection, no serviceperson whose area

is subject to the inspection may reasonably expect any privacy

which will be protected from the inspection."  Id. at 294

(internal quotation marks omitted).  Like the inventory

exception addressed above, "the primary purpose of an inspection

cannot be to obtain evidence for use in a trial by court-

martial."  Id. (internal quotation marks omitted).

"The reasonableness of an inspection is determined by

whether the inspection is conducted in accordance with the

commander's inspection authorization, both as to the area to be

inspected, and as to the specific purpose set forth by the

commander for ordering the inspection."  United States v. Ellis,

24 M.J. 370, 372 (C.M.A. 1987).  Under these guidelines, the

search of Kelly's computer cannot be classified as an inspection

because JPED's search for "gore" "inappropriate" and "porn" was

not authorized as an inspection by anyone, let alone an officer

with authority to order an inspection.  And in this case, the

"primary purpose" of the search for "gore," "inappropriate," and

"porn" did not "determine [or] ensure the security, military

fitness, or good order and discipline of the unit."  See

Jackson, 48 M.J. at 293 (internal quotation marks omitted).  The

19

rationale for the search, per AR 638-2, was to avoid embarrassment or added sorrow to the recipient. As in our analysis of the inventory exception, this rationale also fails with respect to the inspection analysis. Kelly was the ultimate recipient of his PE, and SSgt RM was aware of the fact when he conducted the search. The search of Kelly's laptop was not permissible under the inspection exception to the Fourth Amendment's protection against unreasonable searches.

4. Summary

JPED's search of Kelly's computer does not fall within the exceptions to the Fourth Amendment set forth in M.R.E. 313 for inventories or inspections. We therefore hold that the search of Kelly's laptop violated his Fourth Amendment right to be protected from unreasonable search and seizure. The military judge abused his discretion when he denied Kelly's motion to suppress the evidence found on his laptop, and the CCA erred in affirming that decision.

### Decision

The decision of the United States Army Court of Criminal Appeals as to the findings of Charges I and II and their specifications and the sentence is reversed. The findings as to Charges I and II and their specifications are set aside and dismissed. The decision of the CCA as to Additional Charges I and II and their specifications is affirmed. The case is

returned to the Judge Advocate General of the Army for remand to the CCA for sentence reassessment or, if necessary, a sentence rehearing may be ordered.