# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
ALDYKIEWICZ, BROOKHART, and SALUSSOLIA
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist JAMES R. BUTLER III**
**United States Army, Appellant**

ARMY 20180385

Headquarters, 7th Infantry Division
Lanny J. Acosta, Jr. and Jennifer B. Green, Military Judges
Colonel Russell N. Parson, Staff Judge Advocate

For Appellant: Captain Steven J. Dray, JA; Matthew Flynn, Esquire (on brief);
Daniel Conway, Esquire.

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H.
Williams, JA; Major Craig J. Schapira, JA; Captain Christopher K. Wills, JA (on
brief).

29 May 2020

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

SALUSSOLIA, Judge:

This case is now before us for review pursuant to Article 66, UCMJ.[1]
Appellant alleges five errors, one of which merits discussion, but does not warrant

---

[1] A panel with enlisted members, sitting as a general court-martial, convicted
appellant, contrary to his pleas, of one specification of sexual assault, three
specifications of abusive sexual contact, and one specification of false official
statement in violation of Articles 120 and 107, Uniform Code of Military Justice, 10
U.S.C. §§ 920, 907 [UCMJ]. The convening authority approved the adjudged
sentence of a dishonorable discharge, confinement for three years, forfeiture of
$1,638.30 pay per month for thirty-six months, and reduction to the grade of E-1.

(continued . . .)

relief. Appellant asserts the military judge abused her discretion in admitting the victim's prior consistent statements pursuant to Military Rule of Evidence [Mil. R. Evid.] 801(d)(1)(B)(ii). We agree that the military judge erred in her misapplication of Mil. R. Evid. 801(d)(1)(B)(ii). Nonetheless, for the reasons set forth below we find the military judge arrived at the correct result in admitting the victim's prior consistent statements, even if for the wrong reason. *See United States v. Carista*, 76 M.J. 511, 515 (Army Ct. Crim. App. 2017). Alternatively, if it was error to admit the victim's prior consistent statements, we find no material prejudice to appellant's substantial rights.

## BACKGROUND

### *The Offense*

Appellant's convictions primarily stem from two incidents—one involving Specialist (SPC) FC and the other involving HM.[2] The assigned error we discuss pertains to the incident involving SPC FC while assigned at Joint Base Lewis-McChord (JBLM).

From April 2016 until December 2016, appellant and SPC FC socialized at work and during off-duty hours. Although a few soldiers described SPC FC's behavior toward appellant as being flirtatious with sexual overtones, SPC FC denied any such behavior, describing her relationship with appellant as nothing more than "just coworkers and friends."

On the night of 29 December 2016, SPC FC and a fellow female soldier consumed a few shots of alcohol before they left post and went to a dance club. Upon arriving at the club, SPC FC greeted appellant and other soldiers she recognized. Specialist FC drank more alcohol at the club and later could not recall further interaction with appellant, to include dancing with him. Early the next morning, SPC FC and the other female soldier left the club and returned to post.

Upon SPC FC's return to post, a male soldier observed her in an intoxicated state. She did not know where her room was located, so he assisted her to her room and remained there for approximately fifteen minutes. Upon leaving SPC FC in her

---

(. . . continued)

Rule for Courts-Martial [R.C.M.] 1003(b)(2) states that "a sentence to forfeiture shall state the exact amount in whole dollars." We correct the error in the amount of the approved forfeiture in our decretal paragraph.

[2] Specialist FC held the rank of sergeant at the time of appellant's trial. HM was on active duty at the time of the incident holding the rank of private first class.

room, the male soldier secured her door. Specialist FC exchanged text messages with appellant and briefly spoke to him on the phone[3] before falling asleep.

During the early morning of 30 December, SPC FC was awakened by appellant knocking on her door. Wrapped in a blanket, she opened the door and let him in. Upon entering the room, appellant noticed SPC FC appeared very intoxicated. He observed her crawling on the floor and vomiting, prompting him to ask whether she was okay. She replied that "she was good." Assuming appellant would let himself out, SPC FC went back to bed and fell asleep.

When SPC FC awoke again, she found appellant lying on top of her attempting to have sexual intercourse with her. SPC FC thought, "this can't be happening" and tried to close her legs. She moved her neck to prevent appellant from kissing her. Appellant responded by telling her to "stop playing." Despite SPC FC's struggles, appellant penetrated her vagina with his penis. Appellant eventually stopped, got up and left the room. Specialist FC laid on her bed in a described state of shock and fell back to sleep.

At various times on 30 December, SPC FC told three soldiers—Specialists Johnson, Martin, and Daniels—that appellant "raped" her. The same day, SPC FC told a female noncommissioned officer, Sergeant (SGT) Bannister, about being sexually assaulted by appellant. Sergeant Bannister encouraged SPC FC to report it and took her to the hospital.

Shortly thereafter, Army Criminal Investigation Command (CID) launched an investigation that included interviewing appellant on two occasions. During the first interview, appellant waived his rights and admitted going to SPC FC's room after returning from the club. Appellant claimed that SPC FC answered the door naked and very intoxicated. Appellant said SPC FC vomited a few times and he tried to give her water to drink. Appellant reported helping SPC FC into bed, laying down next to her for about five minutes and then leaving the room. Appellant denied at least five times that there was any sexual contact between SPC FC and him.

Army CID conducted a second interview of appellant four days later. Appellant again waived his rights and provided a statement changing his original story. During this interview, appellant admitted to having sexual intercourse with SPC FC, but claimed it was consensual. In this version, appellant stated that after entering her room, he observed a heavily intoxicated SPC FC crawling on the floor

---

[3] After noting missed telephone calls from appellant, SPC FC called him back and spoke to him for a little over a minute. She does not recall the content of their conversation, but her messages did not convey an invitation for appellant to come to her room. Instead, her messages indicated she would see him later that day.

and vomiting. Appellant claimed he asked her if she was okay and she replied she was good. Appellant stated they had sex for about five minutes before he decided to stop, got out of bed, and left her room. Appellant claimed that SPC FC never said no or pushed him away. Appellant said he believed SPC FC consented to sex because she responded affirmatively when he asked her if she was okay after she vomited.

*The Trial*

At trial, SPC FC testified on direct examination regarding the sexual assault. On cross-examination, the defense counsel attacked SPC FC's credibility, challenging her motive for accusing appellant of sexual assault, memory of the incident, and defense-perceived inconsistencies between her trial testimony and other soldiers' observations of her flirtatious behavior toward appellant prior to the incident.

Following the government's case, the defense called a number of witnesses during its case-in-chief, including SGT Clinton and SPC Johnson. Sergeant Clinton testified that while in the work place, she heard SPC FC ask appellant if he wanted to engage in a threesome with her and a friend. This was in direct contradiction with SPC FC's testimony that she had never asked appellant about having a threesome.

The defense called SPC Johnson and during her direct examination, the military judge held an Article 39(a) session to address an objection. During the 39(a) session, the government moved for permission during its cross-examination of SPC Johnson to elicit that SPC FC told SPC Johnson appellant had "raped" her. The government asserted the statement was admissible under Mil. R. Evid. 801(d)(1)(B) as a prior consistent statement because the defense had called into question SPC FC's credibility, asking her questions "along the line[s] of isn't it true you met with the prosecution, isn't it true you met with the prosecution multiple times, [and] isn't it true you have an SVC." The government claimed the purpose of this line of questioning was to suggest SPC FC had a recent motive to fabricate that originated at the time that she met with the government attorneys. Although the government did not state which subpart of Mil R. Evid. 801(d)(1)(B) applied, it is clear from the government's argument that it sought admission under subpart (i).

The defense counsel objected but she did not dispute the government's assertion regarding SPC FC's recent motive to fabricate. Rather, defense counsel objected on the ground that the statement at issue was not a prior consistent statement because SPC FC's motive to fabricate arose after she awoke the morning of the sexual assault, before she had spoken to anyone about it. The defense argued SPC FC had an immediate motive to fabricate based on appellant not staying with

her after they engaged in sexual intercourse and because SPC FC was jealous of appellant's interest in her best friend, whom he had first met the night before.[4]

Overruling the defense's objection, the military judge ruled the government would be permitted during its cross-examination of SPC Johnson to ask her whether SPC FC told her appellant had raped her. The court ruled the evidence was "actually" admissible under Mil. R. Evid. 801(d)(1)(b)(ii), explaining the "rule kicks in when credibility has been attacked on another ground." The military judge went on to explain that defense counsel impeached by contradiction SPC FC's credibility and testimony when they elicited testimony from SGT Clinton that SPC FC inquired into a threesome with appellant after SPC FC testified that she did not. The military judge determined that this impeachment by contradiction "allows the government to ask the question." The military judge did not provide any further analysis for her ruling. Relying on her previous rationale, the military judge likewise permitted the government to elicit similar statements from two other defense witnesses, SPC Martin[5] and SPC Daniel.[6]

## LAW AND DISCUSSION

*A. The Relevancy Link between the Prior Consistent Statement and How it Rehabilitates*

Appellant asserts that the military judge erred when she permitted the government to elicit testimony from three defense witnesses regarding statements SPC FC made to each of them that she had been "raped" by appellant. We agree that the military judge misapplied Mil. R. Evid. 801(d)(1)(B)(ii).

---

[4] Although the military judge did not indicate why she rejected defense's contention that SPC FC's motive to fabricate predated the prior consistent statement to SPC Johnson, we find her rejection of defense's contention reasonable.

[5] During the cross-examination of SPC Martin, the government asked whether SPC FC had told her that appellant raped her. The defense objected on the basis of "facts not in evidence" and because the question begs the "finality of judgement." The military judge overruled the objection "on the basis the court ruled earlier with testimony from Specialist Johnson and the court will allow it under [MIL. R. EVID. 801(d)(1)(b)(ii)]."

[6] During the cross-examination of SPC Daniel the government asked "she told you what [appellant] did to her?," in reference to a conversation between SPC Daniel and SPC FC. The defense objected that the question was outside the scope of the direct examination. The military judge overruled the objection, again relying on her previous ruling.

We review a military judge's decision to admit or exclude evidence for an abuse of discretion. *United States v. Kelly*, 72 M.J. 237, 242 (C.A.A.F. 2013). (citation omitted). "A military judge abuses his discretion when his findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and law." *Id.* (citation omitted). The military judge's findings of fact are reviewed under the clearly erroneous standard, while his conclusions of law are reviewed de novo. *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995).

Military R. Evid. 801(d)(1)(B)(ii) permits the use of a prior consistent statement to rehabilitate the credibility of a witness "attacked on another ground." Recently summarized by our superior court, for a prior consistent statement to be admissible under Mil. R. Evid. 801(d)(1)(B)(ii), it must satisfy the following:

> (1) the declarant of the out-of-court statement must testify,
> (2) the declarant must be subject to cross-examination about the prior statement,
> (3) the statement must be consistent with the declarant's testimony,
> (4) the declarant's credibility as a witness must have been "attacked on another ground" other than the ones listed in [Mil. R. Evid.] 801(d)(1)(B)(i), and
> (5) the prior consistent statement must actually be relevant to rehabilitate the witness's credibility on the basis on which he or she was attacked.

*United States v. Finch*, __ M.J. __, 2020 CAAF LEXIS 136, at *18-19 (C.A.A.F. 3 Mar. 2020).

The proponent of the prior consistent statement must articulate "the relevancy link between the prior consistent statement and how it will rehabilitate" the witness's in-court testimony "with respect to the particular type of impeachment that has occurred." *Id*., at *19 (citation omitted). "[T]o be admissible for rehabilitation, a prior consistent statement must satisfy the strictures of [Mil. R. Evid.] 403." *Id*., at *16 (quoting the Drafters' Analysis at A22-16). "Where a military judge properly conducts the balancing test under Mil. R. Evid. 403, we will not overturn his decision unless there is a clear abuse of discretion." *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010) (quoting *United States v. Ruppel*, 49 M.J. 247, 251 (C.A.A.F. 1998)).

Here, the military judge admitted the three statements pursuant to Mil. R. Evid. 801(d)(1)(B)(ii), ruling the defense opened the door when they attacked the in-

court testimony and credibility of SPC FC by eliciting contradictory testimony from another witness. The military judge offered no further explanation for her ruling.[7]

Many of the requirements of Mil. R. Evid. 801(d)(1)(B)(ii) were satisfied: SPC FC testified and was vigorously cross-examined, and the prior statements in question were consistent with her in-court testimony. However, according to the military judge, the basis on which SPF FC was attacked was impeachment by contradiction regarding whether she had asked appellant about engaging in a threesome. The prior consistent statements admitted were SPC FC telling three other soldiers that appellant "raped" her. Here, the military judge failed to establish for the record "the relevancy link between the prior consistent statement and how it [would] rehabilitate" SPC FC on the basis of the contradictory testimony regarding the threesome request. *See Finch*, __ M.J. at __, 2020 CAAF LEXIS 136, at *19.

Without further explanation for her ruling, it is unclear how the military judge concluded that the prior consistent statements were relevant to rehabilitate SPF FC's testimony on the basis on which she was attacked. Accordingly, we find the military judge erred in admitting the statements under Mil. R. Evid. 801(d)(1)(B)(ii)[8].

### B. *The Tipsy Coachman Doctrine*

Even though the military judge mistakenly relied on subpart (ii) of Mil. R. Evid. 801(d)(1)(B) as the basis for admission, we find the ultimate admission of the statements correct under the "Tipsy Coachman Doctrine." *See United States v. Carista*, 76 M.J. 511 (Army Ct. Crim. App. 2017). Failing to rule on the government's reasoning for admitting the prior consistent statements, "the military judge arrived at the correct result, even if for the wrong reason." *United States v. Heath*, 76 M.J. 576, 578 (Army Ct. Crim. App. 2017) (citing *Carista*, 76 M.J. 511).

At trial, the government initially sought to admit SPC FC's out-of-court statements that appellant had raped her under Mil. R. Evid. 801(d)(1)(B)(i). The

---

[7] Without the military judge providing her reasoning for rejecting the government's basis for admission, it is unclear why it was rejected.

[8] We note that military judges are afforded great deference to admit evidence when they conduct a detailed Mil. R. Evid. 403 analysis. Notwithstanding this court's well-established guidance to military judges to place their Mil. R. Evid. 403 analyses on the record, *see, e.g.*, *Ruppel*, 49 M.J. at 251, the military judge failed to conduct a Mil. R. Evid. 403 analysis, let alone place that analysis on the record for our review. *See United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000) ("This Court gives military judges less deference if they fail to articulate their balancing analysis on the record, and no deference if they fail to conduct the Rule 403 balancing.").

government's stated purpose for eliciting the statements was to rebut the defense's implication that SPC FC had developed a recent fabrication or improper influence. The defense's implication could be inferred from the defense counsel asking SPC FC several questions about her multiple meetings with prosecutors and law enforcement officials to include a meeting the Monday before trial.

A statement is "not hearsay" if it is "consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying." Mil. R. Evid. 801(d)(1)(B)(i). By implying SPC FC's testimony had been improperly influenced as recently as the Monday before trial, appellant risked the government offering a consistent statement made by SPC FC at any time before that day. *See Heath*, 76 M.J. at 578 (holding defense opened the door to victim's prior consistent statement by questioning her regarding her pretrial preparation with government counsel and law enforcement). Because SPC FC's statements to her fellow soldiers were consistent with her in-court testimony and predated the alleged recent improper influence, the statements were not hearsay and were properly admissible under Mil. R. Evid. 801(d)(1)(B)(i).

Though the government never specified which subpart of Mil. R. Evid. 801(d)(1)(B) allowed for proper admission of the prior consistent statements, the argument they advanced at trial clearly fell under subpart (i) of the rule. It is imperative that counsel identify whether a prior consistent statement is offered to rebut an allegation of recent fabrication or improper influence or to rehabilitate a witness on a specific point on which that witness's credibility was attacked. Stating with specificity the grounds for admission assists a military judge in providing a clear ruling.

### C. No Substantial Influence on the Findings

Even if it was error for the military judge to admit the statements under either subpart of Mil. R. Evid. 801(d)(1)(B), we are convinced the admission of the statements did not prejudice appellant. *See* UCMJ art. 59(a). "When this court finds that a military judge erred in allowing evidence to be admitted, the government bears the burden of demonstrating that the admission of that erroneous evidence was harmless." *Finch,* __ M.J. at __, 2020 CAAF LEXIS 136, at *24 (citing *United States v. Frost*, 79 M.J. 104, 111 (C.A.A.F. 2019) (citations omitted)). "For preserved nonconstitutional evidentiary errors, the test for prejudice is whether the error had a substantial influence on the findings." *Id.* (internal quotation marks and citations omitted). In testing for prejudice, we consider: "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *Id.* (quoting *United States v. Kohlbek*, 78 M.J. 326, 334 (C.A.A.F. 2019)).

Having conducted a thorough review of the record, the government presented a strong case. First, SPC FC's in-court testimony provided a detailed account of the sexual assault and, although defense counsel extensively cross-examined SPC FC, she made little headway in discrediting SPC FC's account of the actual assault. Second, the government introduced damaging statements by appellant to law enforcement that were essentially uncontroverted by the defense. Specifically, appellant's statements described two different versions of what occurred in SPC FC's room that contradicted each other and contained false statements. In his second version of events, appellant averred that SPC FC consented to having sexual intercourse with him because she said "yes" in response to his inquiry regarding her well-being—an inquiry appellant posed after observing an intoxicated SPC FC crawling on the floor and vomiting. Appellant's claim that SPC FC's "yes," indicating she was ok, constituted consent to engage in sexual intercourse was nothing short of absurd.

We also find the defense's case was not strong. Although defense counsel attempted to advance several theories, none seemed plausible based on our review of the record. First, the defense attempted to establish SPC FC fabricated the sexual assault merely because appellant did not stay with her after they engaged in sex. The defense also attempted to show SPC FC fabricated her allegation because she was jealous that appellant displayed an interest in her best friend, with whom appellant had exchanged phone numbers the night before the assault. Additionally, defense counsel was unsuccessful in attacking SPC FC's character for honesty given that one of the defense witnesses testified unequivocally that SPC FC was an honest person.

We find the materiality and quality of the three statements in question—SPC FC telling three individuals she was raped by appellant—was low. First, the statements are conclusory in nature and do not offer any supporting facts. They merely conclude appellant "raped" SPC FC but do not provide substantive details that could have corroborated SPC FC's in-court testimony recounting the sexual assault. We also note that it was the defense that first introduced evidence that SPC FC initially told numerous friends about the sexual assault before she officially reported it. As a result, the government's subsequent introduction of the three conclusory statements had little, if any, damaging impact.

In light of these considerations, if the military judge erred in admitting the three statements, the government has met its burden to show that they did not have a substantial influence on the findings in this case.

9

**CONCLUSION**

Having considered the entire record, the findings of guilty are AFFIRMED. In accordance with R.C.M. 1003(b)(2), we affirm only so much of the sentence as provides for a dishonorable discharge, confinement for three years, forfeiture of $1,638.00 pay per month for thirty-six months, and reduction to the grade of E-1. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the sentence set aside by this decision are ordered restored.

Senior Judges ALDYKIEWICZ and BROOKHART concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

10