*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

## UNITED STATES
Appellee

**v.**

## Nicholas R. St. JEAN, Specialist
United States Army, Appellant

**No. 22-0129**
Crim. App. No. 20190663

Argued November 9, 2022—Decided January 30, 2023

Military Judges: Robert L. Shuck (arraignment), Douglas
K. Watkins (motions), and Joseph T. Marcee (trial)

For Appellant: *Scott R. Hockenberry*, Esq. (argued); *Captain Tumentugs D. Armstrong* and *Daniel Conway*, Esq. (on brief); *Major Thomas J. Travers.*

For Appellee: *Captain Andrew M. Hopkins* (argued); *Colonel Christopher B. Burgess* and *Major Pamela L. Jones* (on brief).

Chief Judge OHLSON delivered the opinion of the Court, in which Judge SPARKS, Judge MAGGS, Judge HARDY, and Senior Judge STUCKY joined.

———————

Chief Judge OHLSON delivered the opinion of the Court.

Contrary to his pleas, a general court-martial with enlisted representation convicted Appellant of one specification of making a false official statement and one specification of sexual assault in violation of Articles 107 and 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 920 (2018). The adjudged and approved sentence included a dishonorable discharge and confinement for five years. The United States Army Court of Criminal Appeals (CCA) set aside and dismissed the Article 107, UCMJ, charge and its specification, affirmed the remaining findings, and reduced the sentence of confinement by two months. We granted review of the following issue:

> Whether the military judge erred by excluding evidence under Mil. R. Evid. 412 and by preventing the defense from presenting evidence of participation and consent during the res gestae of the charged sexual assault.

*United States v. St. Jean*, 82 M.J. 357, 357-58 (C.A.A.F. 2022) (order granting review). We answer the granted issue in the negative and affirm the judgment of the CCA.

## I. Background

Appellant met MC shortly after Appellant was assigned as her unit sponsor at Fort Sill, Oklahoma, in early May 2018. On May 4, Appellant, MC, and some fellow soldiers gathered in a barracks room. After MC consumed alcohol, Appellant escorted MC to her room and she went to bed. MC testified that at some point later that night (or in the early hours of May 5), she woke to Appellant penetrating her vagina with his penis. Appellant was eventually charged with sexual assault.

Before trial, Appellant moved to admit the following evidence pursuant to Military Rule of Evidence (M.R.E.) 412: (1) testimony from Appellant that MC invited Appellant to her room on May 3, 2018, which resulted in consensual kissing the day before the alleged assault; (2) testimony

from two witnesses that they saw hickey[1] marks on Appellant the day after the alleged assault; (3) testimony from a witness stating that she saw MC asleep on a fold-out bed beside Appellant the day after the alleged assault; and (4) testimony from Appellant that MC showed Appellant a Polaroid picture of her bare buttocks with a bruise and told Appellant she liked to be spanked.

During the Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2018), hearing to discuss the proffered M.R.E. 412 evidence, defense counsel asserted that the hickeys on Appellant's body were the result of both the prior kissing incident *and* the sexual intercourse on the night of the alleged assault. Defense counsel argued that evidence of the prior sexual activity—the kissing incident—between Appellant and MC was relevant because it supported Appellant's position that the subsequent alleged sexual assault was in fact consensual. Defense counsel also argued that hickeys from the purported sexual assault demonstrated that the encounter was consensual because victims do not "willingly suck on people's neck and chest as they are sexually assaulting them."

A pretrial military judge (hereinafter "the motions judge") made an initial oral ruling that evidence Appellant was seen with hickeys the day after the alleged sexual assault would be res gestae evidence[2]—and not M.R.E. 412 evidence—if the hickeys occurred during the course of the charged offense. The motions judge subsequently issued a written ruling denying the defense motion as to the testimony about the consensual kissing incident, the hickeys, the photo, and the spanking comment, but granted the motion as to the testimony that MC and Appellant were

---

[1] A hickey is "a temporary red mark or bruise on the skin (such as one produced by biting and sucking)." *Merriam-Webster Collegiate Dictionary*, https://www.merriam-webster.com/dictionary/hickey (last visited Jan. 25, 2023).

[2] Res gestae is defined as "[t]he events at issue, or other events contemporaneous with them." *Black's Law Dictionary* 1565 (11th ed. 2019).

observed on the same fold-out bed a day after the sexual
assault allegedly occurred.

In his written ruling, the motions judge found that the
evidence proffered by Appellant did have *some* relevance as
to consent under M.R.E. 401. He noted that if MC "made
out with" Appellant, gave him hickeys, showed him the
photo of her bare buttocks, and said she liked to be
spanked, then the "evidence has a very slight tendency to
show . . . [MC] might be willing to consent to having sex"
with Appellant. However, the motions judge reiterated his
view of the tenuous relevancy of the evidence, and con-
cluded the evidence was substantially more prejudicial
than probative under M.R.E. 403. Notably, in his ruling ex-
cluding the evidence, the motions judge mentioned the
hickeys but did not distinguish between hickeys that may
have occurred during the alleged sexual assault and those
received during the prior kissing incident.

At trial, when defense counsel pursued a line of ques-
tioning seemingly designed to elicit testimony regarding
the hickeys, trial counsel objected on M.R.E. 412 grounds.
The military judge—a different judge than the motions
judge (hereinafter "the trial judge")—conducted a closed
Article 39(a), UCMJ, session. Defense counsel sought to ex-
plain that there were two sets of hickeys, and the hickeys
from the alleged sexual assault constituted res gestae evi-
dence. The trial judge then questioned defense counsel
about whether there was any evidence before the court sug-
gesting that Appellant received a hickey during the alleged
sexual assault rather than only during the consensual kiss-
ing incident. Defense counsel conceded there was no evi-
dence currently before the court suggesting hickeys oc-
curred in the course of the charged offense. The trial judge
next inquired about the evidence defense counsel could
proffer on this point, to which counsel replied: "Your honor,
I can move on from this, and I could possibly readdress it
later if evidence is presented on that." However, the record
before us does not indicate that defense counsel ever came
back to this issue, and the evidence was never introduced

before the panel. Appellant later was convicted of the sexual assault offense.

Appellant appealed his conviction to the CCA. In its decision, the CCA did not substantively discuss the issue currently before this Court, only stating in a footnote that it gave "full and fair consideration to [A]ppellant's other assigned errors . . . and determin[ed] they warrant neither discussion nor relief." *United States v. St. Jean*, No. ARMY 20190663, 2022 CCA LEXIS 26, at *1 n.1, 2022 WL 135316, at *1 n.1 (A. Ct. Crim. App. Jan. 13, 2022) (unpublished).

## II. Standard of Review

"This Court reviews a military judge's decision to admit evidence for an abuse of discretion." *United States v. Frost*, 79 M.J. 104, 109 (C.A.A.F. 2019). "This abuse of discretion standard is a strict one, calling for more than a mere difference of opinion—[t]he challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Hendrix*, 76 M.J. 283, 288 (C.A.A.F. 2017) (alteration in original) (citation omitted) (internal quotation marks omitted).

## III. Discussion

It is worth clarifying that Appellant is challenging the exclusion of only two pieces of evidence: (A) evidence that Appellant and MC engaged in consensual kissing the day before the alleged sexual assault; and (B) evidence that Appellant was seen with hickey marks the day after the alleged assault. The motions judge excluded the consensual kissing evidence on the basis that it was substantially more prejudicial than probative under M.R.E. 403. The trial judge excluded the hickey evidence because Appellant failed to proffer evidence suggesting Appellant received the hickeys during the alleged assault.

We conclude that neither the motions judge nor the trial judge abused his discretion when ruling on these matters. Specifically, for the reasons identified below, the motions judge did not abuse his discretion in excluding evidence of the prior sexual encounter (i.e., the kissing incident between Appellant and MC) because exclusion was within

"the range of choices reasonably arising from the applicable facts and the law," *United States v. Miller*, 66 M.J. 306, 307 (C.A.A.F. 2008), and the trial judge did not abuse his discretion in requiring the defense to make a sufficient proffer before the hickey evidence would be deemed admissible at trial.

## A. The Prior Consensual Kissing Incident

Appellant moved to admit evidence under M.R.E. 412 that he and MC "made out" the day before the alleged sexual assault. The evidence consisted of (1) an affidavit from Appellant stating as much and (2) testimony from two witnesses who observed Appellant with hickeys the day *after* the alleged assault- The motions judge excluded this evidence.

M.R.E. 412 is a rule of exclusion which provides that in any proceeding involving an alleged sexual offense, evidence of a victim's sexual behavior or predisposition is not admissible, subject to three limited exceptions. Appellant sought to admit the evidence of the prior sexual encounter (i.e., the kissing incident) under two of those exceptions: M.R.E. 412(b)(2) and M.R.E. 412(b)(3). M.R.E. 412(b)(2) makes admissible "evidence of specific instances of a victim's sexual behavior with respect to the person accused of the misconduct, if offered by the accused to prove consent." M.R.E. 412(b)(3) makes admissible evidence of other sexual behavior if its exclusion would violate the accused's constitutional rights. Generally, this means evidence must be admitted under M.R.E. 412(b)(3) when the evidence is relevant, material, and favorable to the defense. *United States v. Erikson*, 76 M.J. 231, 235 (C.A.A.F. 2017). Appellant bore the burden of demonstrating that one of these exceptions applies. *United States v. Carter*, 47 M.J. 395, 396 (C.A.A.F. 1998). Importantly, however, evidence falling under either exception is still subject to M.R.E. 403, which permits a military judge to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence."

Military judges receive wide discretion in conducting balancing under M.R.E. 403, but military judges' rulings receive less deference if they fail to articulate their analysis on the record. *United States v. Collier*, 67 M.J. 347, 353 (C.A.A.F. 2009). Appellant urges this Court to afford the motions judge's ruling minimal deference because the motions judge was not particularly clear on the record about his reasoning. We note, however, that an absence on the record of a military judge's reasoning does not—by itself—provide a basis for finding error. Unless there are contrary indications, we must assume a military judge properly considered an accused's claim consistent with the law. *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012).

The motions judge here issued a *seven-page* ruling denying Appellant's motion. The motions judge reasonably described the nature of the evidence and properly stated the legal standard for making an admissibility determination under M.R.E. 403 and M.R.E. 412. He determined the probative value of the evidence was "very slight," primarily because " 'making out' " was quite dissimilar to the charged conduct. The military judge then concluded that the evidence's very slight probative value was substantially outweighed by the concerns enumerated in M.R.E. 403, specifically stating that "M.R.E. 403 concerns abound."

It is true that the motions judge did not explicitly detail his M.R.E. 403 concerns for each piece of Appellant's proffered evidence. However, he did articulate some of his concerns regarding the Polaroid picture and MC's alleged affinity for spanking, noting the "evidence is unfairly prejudicial in the sense that a factfinder is likely to react emotionally, rather than logically" and the "evidence could likely be construed as an invitation by [MC] to be sexually abused." Moreover, the motions judge cited M.R.E. 403 and M.R.E. 412 when denying Appellant's motion to admit the evidence of the " 'mak[e] out' " session. In light of these circumstances, this Court is not convinced the motions judge's ruling was so deficient that it only merits minimal deference. Accordingly, we will apply the "abuse of discretion"

standard when reviewing the motions judge's evidentiary ruling.

Under the abuse of discretion standard, a military judge's ruling will be reversed only if his or her "findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *Frost*, 79 M.J. at 109 (internal quotation marks omitted) (quoting *United States v. Kelly*, 72 M.J. 237, 242 (C.A.A.F. 2013)). Appellant does not claim that the motions judge's findings of fact were clearly erroneous. However, Appellant argues that the motions judge did have an erroneous view of the law and alleges three distinct legal errors. First, Appellant argues the motions judge's view that the probative value of the submitted evidence was low was based on an erroneous interpretation of an Army court decision: *United States v. Andreozzi*, 60 M.J. 727 (A. Ct. Crim. App. 2004). Second, Appellant argues the motions judge erred by failing to analyze the proffered evidence under the constitutional exception to M.R.E. 412. Third, Appellant argues the motions judge erred by failing to cite any specific M.R.E. 403 concerns in excluding this evidence. The Court is unpersuaded by all three arguments.

First, Appellant argues the motions judge misapplied *Andreozzi* by failing to recognize that the case involved a particularly bizarre set of facts and "case law from the service courts of appeals shows that [M.R.E. 412] evidence need not be similar to the charged conduct." Brief for Appellant at 15-16, *United States v. St. Jean*, No. 22-0129 (C.A.A.F. June 6, 2022). But the motions judge in no way characterized *Andreozzi* as *requiring* M.R.E. 412 evidence to be similar. Rather, he relied on *Andreozzi* for its proposition that "[r]elevance of prior sexual activity between an accused and an alleged victim is *increased* by the degree of its similarity to the charged conduct, *and* whether the sexual activity is distinctive and unusual." *Andreozzi*, 60 M.J. at 739 (emphasis added). This approach was not erroneous. Similar to the lower court's decision in *Andreozzi*, this

Court also has considered the similarity between prior sexual behavior and an alleged sexual assault when determining the probative value of proffered evidence, albeit in the context of the admissibility of a victim's prior sexual behavior with individuals other than the defendant. *See United States v. Sanchez*, 44 M.J. 174, 179-80 (C.A.A.F. 1996) ("Likewise, where the sexual conduct is so particularly unusual and distinctive as to verify the defendant's version, there will be a constitutional requirement to admit the evidence."). Under this circumstance, this Court cannot conclude the motions judge erred when applying the principles of *Andreozzi*. The two interactions at issue here between Appellant and MC were quite dissimilar; "making out" is simply not comparable to sexual intercourse. Stated differently, the fact that a person consented to kissing on one day is not particularly probative of the issue of whether that person consented to full sexual intercourse a day later.

Second, we decline to adopt Appellant's conclusion that the motions judge failed to analyze Appellant's proffered evidence under the constitutional exception to M.R.E. 412. Although we underscore that it would have been better if the motions judge had more clearly *applied* the M.R.E. 412 framework when analyzing and deciding this matter, the circumstances surrounding this litigated issue and the substance of the motions judge's seven-page ruling is sufficient for us to conclude that he in fact did consider M.R.E. 412(b)(3). To begin with, Appellant heavily relied on M.R.E. 412(b)(3)—the constitutional exception—in his original motion to submit evidence. It would be strange indeed if the motions judge did not consider the defense motion in this context. Next, the motions judge explicitly acknowledged that Appellant had offered the evidence as evidence of consent "under the 'constitutionally required' exception" and cited M.R.E. 412(b)(3). He also cited and considered relevant case law from this Court which discusses the constitutional exception. Finally, the motions judge contrasted the facts in Appellant's case with this Court's analysis in *United States v. Ellerbrock*, 70 M.J. 314 (C.A.A.F. 2011), a case where we concluded certain

9

evidence was constitutionally required. Because of these factors, we cannot conclude that the motions judge failed to analyze Appellant's proffered evidence under the constitutional exception to M.R.E. 412.

Finally, Appellant argues that the motions judge failed to adequately cite any M.R.E. 403 concerns when excluding the evidence. Indeed, we note that although the motions judge asserted that "M.R.E. 403 concerns *abound*," he articulated only one of them in his ruling. (Emphasis added.) Specifically, the motions judge stated "that a factfinder is likely to react emotionally, rather than logically, to the implication that [MC] enjoys abusive sexual behavior." As suggested by Appellant, the motions judge may have been solely referring here to the Polaroid picture and MC's alleged fondness for spanking. However, we note that the motions judge's discussion of this M.R.E. 403 concern immediately follows his discussion of the minimal probative value of the " 'mak[e] out' " session in addition to the Polaroid picture and the spanking. Thus, it can be reasonably inferred that the motions judge had M.R.E. 403 concerns about *all* the evidence, and merely gave one concrete concern about one piece of evidence to illustrate his point. Accordingly, we decline to adopt Appellant's restrictive view that the motions judge failed to adequately conduct a M.R.E. 403 analysis.[3]

In sum, we conclude that the motions judge's decision to exclude evidence that Appellant and MC "made out" the day before the alleged sexual assault was within the range of choices reasonably arising from the applicable facts and the law.

---

[3] Moreover, this Court may affirm a military judge's ruling if he or she arrived at the correct result, even if for the wrong reason. *United States v. Tyler*, 81 M.J. 108, 112 (C.A.A.F. 2021). Therefore, even if this Court *were* to conclude the motions judge failed to properly conduct an M.R.E. 403 analysis, this Court could nonetheless affirm his ruling.

## B. The Hickey Evidence

As explained above in greater detail, during trial the Government objected when the defense attempted to elicit testimony about the hickeys, and the trial judge excused the panel to conduct an Article 39(a), UCMJ, session. Appellant sought to explain that the witness would testify as to having observed hickeys arising from the alleged sexual assault, which would constitute res gestae evidence. The trial judge asked the defense what evidence was before the court that the hickeys were from the night of the offense. Defense counsel ultimately stated that it "could move on from this" and "could possibly readdress it later." However, defense counsel seemingly never returned to the matter, and the trial judge never affirmatively excluded the evidence. Under this circumstance, there was no ruling by the trial judge to be appealed, and hence nothing for this Court to review. *See, e.g.*, *United States v. Welch*, 25 M.J. 23, 27 (C.M.A. 1987) (noting the military judge did not make a final ruling excluding evidence).

## IV. Judgment

The judgment of the United States Army Court of Criminal Appeals is affirmed.